# EXHIBIT A

STATE OF WISCONSIN     CIRCUIT COURT     MILWAUKEE COUNTY

06CV012647

GLENN BURTON, JR., Minor, by his
guardian *ad litem*, SUSAN M.
GRAMLING,

    Plaintiffs,

vs.

AMERICAN CYANAMID CO.;
ARMSTRONG CONTAINERS, INC.;
CONAGRA FOODS, INC.; E.I. DUPONT
DENEMOURS & COMPANY; LEAD
INDUSTRIES ASSOCIATION, INC.;
MILLENNIUM HOLDINGS, LLC; NL
INDUSTRIES, INC., THE ATLANTIC
RICHFIELD COMPANY; THE
SHERWIN-WILLIAMS COMPANY;
DEPARTMENT OF HEALTH AND
FAMILY SERVICES, STATE OF
WISCONSIN;

    Defendants.

COMPLAINT

Case No. _____

Case code 30107

FILED
DEC 2 6 2006
JOHN BARRETT
Clerk of Circuit Court

Now comes the above-named Plaintiff, by his attorneys, for a cause of action against the above-named defendants, and alleges and shows to the Court as follows:

## I. PARTIES

1. <u>Glenn Burton, Jr.</u> is a minor and is a resident of the State of Wisconsin, residing at 1320 W. Locust Street, Milwaukee WI.

2. <u>Susan M. Gramling</u> is guardian *ad litem* for Glenn Burton, Jr. and is a resident of the State of Wisconsin.

3. <u>The Department of Health and Family Services</u>, State of Wisconsin, has made certain

1

Case 2:07-cv-00303-LA    Filed 03/28/07    Page 2 of 12    Document 3-2

payments on behalf of the Plaintiff, with respect to medical, hospital and/or disability expenses which were incurred by the Plaintiff as a result of the unlawful acts alleged herein. Said Defendant is joined as a party for the purpose of complying with the provisions of § 803.03 Wis. Stats.

4. <u>American Cyanamid Company</u> ("American Cyanamid") is being sued in its own capacity and is a Maine corporation with its principal place of business in New Jersey.

5. <u>Armstrong Containers, Inc.</u> ("Armstrong") is being sued in its capacity as the successor-in-interest to the John R. MacGregor Co. and the MacGregor Lead Company, and is a Delaware corporation with its principal place of business in Georgia.

6. <u>ConAgra Foods, Inc.</u> ("ConAgra"), the successor-in-interest to WP Fuller and Fuller-O'Brien, is a Delaware corporation with its principal place of business in Nebraska.

7. <u>E.I. DuPont DeNemours & Company</u> ("DuPont") is a Delaware corporation with its principal place of business in Delaware.

8. <u>Millennium Holdings, LLC</u> ("Millennium'), the successor-in-interest to Glidden Paints, is a Delaware corporation with its principal place of business in Texas.

9. <u>NL Industries, Inc.</u> ("NL Industries") formerly known as the National Lead Company, is a New Jersey corporation with its principal place of business in Texas.

10. <u>The Atlantic Richfield Company</u> ("ARCO"), the successor-in-interest to International Smelting and Refining Company, Anaconda Lead Products Company, Anaconda Sales Company, Anaconda Copper Mining Company, and International Lead Refining Company, is a Delaware corporation with its principal place of business in California.

11. <u>The Sherwin-Williams Company</u> ("Sherwin-Williams") is an Ohio corporation with its

2

principal place of business in Ohio.

12. At all pertinent times, American Cyanamid, Armstrong, ConAgra, DuPont, Millennium, NL Industries, ARCO and Sherwin-Williams (hereafter referred to collectively as "Industry Defendants") together with their agents, servants, employees, alter egos, and predecessor corporations, designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold white lead carbonate products used as a pigment in paints and coatings for residential use in the State during the relevant time period.

## II. FACTS

13. On or about February 25, 2002, Glenn Burton, Jr.'s family purchased the property located at 1320 W. Locust Street, Milwaukee, Wisconsin. Thereafter, the 1320 W. Locust Street premises were occupied by the Plaintiff and his family until present time.

14. During the period the Plaintiff has resided at 1320 W. Locust Street, Milwaukee, Wisconsin, the surfaces of the residence was coated with paint containing white lead carbonate pigment that was designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants thereby causing the Plaintiff to be exposed to and ingest said white lead carbonate.

15. The white lead carbonate pigment designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants was and is an inherently defective and unreasonably dangerous product.

16. Specifically, the white lead carbonate designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants is hazardous because

3

exposure of children to white lead carbonate causes severe and permanent injuries, including, but not limited to learning disabilities, decrements in intelligence, and deficits in a wide range of neuropsychological functioning, including visual motor skills, fine motor skills, verbal skills, attention and concentration, memory, comprehension and impulse control. It can also cause coma, seizure and death.

17. The Industry Defendants designed the white lead carbonate so as to allow them to distinguish between different grades at the point of sale and promoted the various grades for different purposes despite the fact that all of the white lead carbonate designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold for use in paint by the Industry Defendants was functionally interchangeable, physically indistinguishable and identically defective.

18. The Plaintiff is unable to identify the specific manufacturer, supplier and/or distributor of the white lead carbonate present in the residences in which he was exposed. The Plaintiff's inability to identify the manufacturer, supplier and/or distributor of the white lead pigment was not and is not the fault of the Plaintiff.

19. The white lead carbonate designed, manufactured, promoted, and sold by the Industry Defendants was in a condition not contemplated by the ultimate consumer and was dangerous to an extent beyond that which was contemplated by the ordinary consumer.

20. Although the use of all leaded pigments was banned in the United States in 1978, white lead carbonate is still present in and on many homes, schools, hospitals and other public and private buildings throughout the State, including the premises located at 3123 North 41st Street, Milwaukee, Wisconsin.

21. Industry Defendants knew and/or should have known since at least the early 1900's that white lead carbonate is hazardous to human health, and in particular to children. For example, in an 1881 booklet entitled "Paints and Painting," Sherwin-Williams wrote:

> *"While it is true that carbonate of lead possesses some of the best elements of paint, it is also true that in other respects it is defective."*

In another example, in its employee newsletter for the month of January 1900, Sherwin-Williams published the following statement:

> *"It is also familiarly known that white lead is a deadly cumulative poison, while zinc is innocuous. It is true, therefore, that any paint is poisonous in proportion to the percentage of lead contained in it."*

In an additional example, in its employee newsletter for the month of May, 1915, Sherwin-Williams published the following statement:

> *"White lead ... has some fatal defects, chief of which is the tendency to 'chalk' off after exposure for a year or two."*

22. The Industry Defendants also knew and/or should have known that there existed, at all relevant times, safer alternatives to the use of white lead carbonate as a pigment for residential paints and coatings.

23. In 1971, after decades of medical research had unambiguously implicated lead pigments, including white lead carbonate as the major contributing force in childhood lead poisoning, and at a time when the majority of paint and pigment manufacturers had ceased production of whitelead carbonate, American Cyanamid entered the white lead carbonate market.

24. Despite their knowledge that white lead carbonate pigment, when used as designed and as intended, was hazardous to human health, each of the Industry Defendants continued to design,

5

manufacture, process, market, promote, supply, distribute and/or sell white lead carbonate pigments, failed to warn of the hazardous nature of white lead carbonate pigment, and failed to adequately test white lead carbonate pigments.

25. Each of the Industry Defendants also contributed to the creation of a risk of harm to children when it failed to disclose the hazardous nature of white lead carbonate and instead marketed and represented its products containing white lead carbonate as safe.

26. Specifically, the Industry Defendants engaged in promotional campaigns that failed to disclose the dangers of using and exposing children to paint and coatings products containing white lead carbonate pigments. Further, the Industry Defendants marketed paints and coatings containing white lead carbonate as a product that fostered health and well-being and that could be used safely on interior and exterior surfaces where the presence of children was likely.

27. Despite the knowledge of each of the Industry Defendants regarding the hazards of white lead carbonate when used as a pigment in residential paint, each failed to disclose the dangers of using and exposing children to white lead and each thereby knowingly contributed to the creation of the risk of harm to the Plaintiff.

28. Instead, for decades the Industry Defendants marketed white lead carbonate as a safe product that fostered health and well-being and promoted white lead as a pigment for use in areas inhabited by children.

29. Each of the Industry Defendants also contributed to the creation of the risk of harm to the Plaintiff through participation in trade associations such as the Lead Industries Association ("LIA") and the National Paint, Varnish, & Lacquer Association (NPVLA), and said activity included, *inter*

6

*alia*, marketing white lead carbonate as a pigment in paint through misleading advertisements and promotions.

30. The LIA is not a party because it is presently under the protection of the bankruptcy laws in the United States. From at least 1928 through the events material to allegations of this complaint, the LIA was the agent, servant, employee, alter ego, aider and abettor of one or more of the Industry Defendants and acted individually and/or within the scope of its agency, servitude and employment in promoting and marketing white lead carbonate products used as a pigment in paints and coatings for residential use in the State of Wisconsin during the relevant time period.

31. Through the LIA and NPVLA, each of the Industry Defendants also sought to suppress all unfavorable information and publicity about white lead carbonate without regard for the truth of such information and despite its own contrary knowledge about the severe hazards posed by white lead carbonate when used as a pigment in paint.

32. As a result of the intentional, negligent and other wrongful conduct of the Industry Defendants in designing, manufacturing, processing, marketing, promoting, supplying, distributing and/or selling white lead carbonate, said hazardous product is present in and on the residence located at 1320 W. Locust Street, Milwaukee, Wisconsin.

33. Beginning on or about August 19, 2002, the Plaintiff sustained lead poisoning by ingesting white lead carbonate derived from intact accessible painted surfaces, paint chips, paint flakes and dust that was derived from paints and coatings in and on the residence located at the premises located at 1320 W. Locust Street, Milwaukee, Wisconsin.

34. During the course of his residency at 1320 W. Locust Street, Milwaukee, Wisconsin, the

7

Plaintiff continued to be poisoned by the ongoing ingestion of white lead carbonate derived from the surfaces of the aforementioned premises which were painted with paints and coatings containing said pigment.

35. At all relevant times, the conduct of the Defendants was malicious and in reckless and/or intentional disregard for the rights of the Plaintiff.

36. As a direct and proximate result of these and other wrongful actions by the Defendants, the Plaintiff has suffered severe and permanent injuries, including, but not limited to, great pain of body and mind and significant neurological deficits, past and future hospital and medical expenses, and impairment of the Plaintiff's ability to live and enjoy life, all in an unspecified amount pursuant to Wisconsin Statutes.

### III. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Strict Liability (Industry Defendants)**

37. The Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs of this complaint.

38. The Industry Defendants have at all times material to this action been engaged in the business of designing, manufacturing, promoting, selling, distributing, and/or supplying of white lead carbonate which was used in the painting, staining, construction of, and the maintenance and remodeling of the residence located at 1320 W. Locust Street, Milwaukee, Wisconsin.

39. The white lead carbonate that the Plaintiff was exposed to was in substantially the same condition as it was before leaving the control of the Industry Defendants.

40. At the time that the white lead carbonate left the possession and control of the Industry

8

Defendants, it was a defective and unreasonably dangerous product because, when used in the manner in which it was intended to be used and/or for the purpose that it was reasonably foreseeable it may have been used, it caused substantial and severe injuries to the Plaintiff.

41. The defective condition of the white lead carbonate designed, manufactured, marketed, promoted, supplied, distributed and/or sold by Industry Defendants was a factor that substantially contributed to the Plaintiff's injuries.

## SECOND CAUSE OF ACTION
### Negligence (Industry Defendants)

42. The Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs of this complaint.

43. The Industry Defendants knew or should have known that white lead carbonate when used as a pigment in residential paints and coatings was harmful to children coming into contact with it.

44. Despite the knowledge that white lead carbonate posed an unreasonable risk to the health and welfare of children exposed thereto, the Industry Defendants continued to design, manufacture, promote, sell, distribute, and/or supply white lead carbonate which was used in and on the residence located at 1320 W. Locust Street, Milwaukee, Wisconsin.

45. At all times material hereto, the Industry Defendants were under an obligation of due care to refrain from any act which would cause foreseeable harm to others.

46. At all times material, the Industry Defendants were under a continuing duty to warn about the hazards of their white lead carbonate products.

47. The Industry Defendants also owed a heightened duty of care because their conduct directly impacted the health and welfare of children.

9

48. The Industry Defendants breached their duties by engaging in conduct that posed an unreasonable risk of harm, including, among other things:

   a. selling white lead carbonate without warning the general public, including but not limited to, consumers, ultimate users, retailers, wholesalers, third party paint manufacturers, and other intermediaries, of the dangerous characteristics thereof;

   b. continuing to fail to adequately warn the general public of the dangerous characteristics of white lead carbonate following the sale of its product through the present time;

   c. failing to adequately test white lead carbonate for use in residential paints and coatings; and/or

   d. continuing to design, manufacture, promote, sell, distribute, and/or supply white lead carbonate for use in residential paints and coatings when they knew, or in the exercise of ordinary care, should have known that white lead carbonate was harmful to children and other persons coming into contact with it.

49. The negligence of the Industry Defendants was a factor that substantially contributed to the Plaintiff's injuries.

WHEREFORE the Plaintiff demands judgment against each Defendant, jointly and severally, as follows:

1. For the Plaintiff, Glenn Burton Jr., in an unspecified amount pursuant to Wisconsin Statutes, including but not limited to compensatory and punitive damages;

2. For pre-judgment and post-judgment interest, together with the costs, disbursements of this

action;

3. For any other remedy the court deems just and equitable under the circumstances.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL.

Dated at Milwaukee, Wisconsin, this 22nd day of December, 2006.

LAW OFFICES OF PETER EARLE

Peter G. Earle (WI State Bar No. 1012176)
Attorney for Plaintiff
700 North Water Street, Suite 646
Milwaukee, WI 53202
(414)276-1076

MOTLEY RICE LLC

Jonathan D. Orent (WI State Bar No. 1062035)
Michael G. Rousseau (WI State Bar No. 1062037)
Attorneys for Plaintiff
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
(401) 457-7700

11