# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GLENN BURTON JR.,**
       **Plaintiff,**

    v.                                                                             **Case No. 07-C-0303**

**AMERICAN CYANAMID CO., et al.,**
       **Defendants.**

## DECISION AND ORDER

       Plaintiff, Glen Burton, Jr., a minor, brought this negligence/strict liability action in state court seeking damages for injuries allegedly incurred when he ingested white lead carbonate pigment contained in the paint coating the walls of his home in Milwaukee. Defendants, corporations which manufactured white lead carbonate pigment or are the successors of such manufacturers, removed the case based on diversity of citizenship. The parties agree that the case is governed by Wisconsin law. Plaintiff acknowledges that he cannot establish the identity of the particular manufacturer that produced the particular batch of pigment that he believes caused his injuries. Thus, to identify the responsible party or parties he relies on the risk contribution doctrine, which the Wisconsin Supreme Court adopted in <u>Collins v. Eli Lilly Co.</u>, 116 Wis. 2d 166 (1984) and held was applicable in the lead paint context in <u>Thomas v. Mallett</u>, 285 Wis. 2d 236 (2005). Under the risk contribution doctrine, if all products of the type that injured the plaintiff are fungible and present the identical danger, to prove liability the plaintiff need not establish that a particular defendant manufactured the particular item that harmed him but only that the defendant produced the type of product that caused the injury at a time that it could

reasonably have caused the injury. Collins, 116 Wis. 2d at 195-96. The theory underlying the doctrine is that all the parties that produced the harmful product contributed to the risk that plaintiff would be harmed by it. Defendants contend that to allow plaintiff to use the risk contribution doctrine to prove his case would violate their constitutional rights, and they move for summary judgment. Plaintiff disagrees and cross-moves for partial summary judgment dismissing defendants' affirmative defenses insofar as they are based on defendants' constitutional objections.

The parties have not developed the facts to any appreciable extent. However, for purposes of the pending motions, the facts are not in dispute: in 2002, plaintiff moved into a house, the walls of which were coated with paint containing white lead carbonate pigment, and when the paint deteriorated plaintiff ingested flakes and dust containing such pigment. White lead carbonate pigment is toxic, and as a result of ingesting it plaintiff's cognitive development was adversely affected. White lead carbonate was once the predominant pigment used in residential paint, and defendants or their predecessors manufactured it for varying periods of time. Defendant E.I. Dupont Nemours and Company manufactured it from 1917 to 1924; defendant NL Industries from 1907 to 1976; defendant American Cyanamid Co. from June 1971 to December 1972; and defendant Sherwin-Williams Company from 1910 until 1947; defendant Atlantic Richfield Company's predecessors manufactured it from 1936 to 1946 and defendant Armstrong Container Inc.'s predecessors from 1938 to 1971. No defendant or predecessor of a defendant manufactured white lead carbonate in Wisconsin.

As stated, the principal effect of the risk contribution doctrine is to modify the plaintiff's burden of proving liability. To establish liability in the present case, instead of

having to prove that a particular defendant produced the particular batch of pigment that harmed him, plaintiff may establish a prima facie case by showing that the defendant manufactured or marketed pigment at a time such that it could reasonably have produced the pigment that harmed him. Thomas, 285 Wis. 2d at 320. If plaintiff is able to establish a prima facie case against a defendant, the risk contribution doctrine creates a rebuttable presumption that the defendant produced the pigment that plaintiff alleges harmed him. Id. at 321.

Defendants first contend that the modification of the burden of proof effected by the risk contribution doctrine violates due process. However, outside of the criminal law area, the locus of the burden of proof is not usually an area of constitutional concern. Lavine v. Milne, 424 U.S. 577, 585 (1976). And, in the civil law context, a presumption will be upheld against a due process challenge unless it is arbitrary, i.e., there is no rational connection between the facts to be proved and the fact to be inferred, or if it denies a party a fair opportunity for rebuttal. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 28-29 (1976); Western All. R. Co., v. Henderson, 279 U.S. 639, 642 (1928).

Under the foregoing standard, allowing plaintiff to use the risk contribution doctrine in the present case would clearly not offend due process. There is nothing arbitrary or irrational either about the risk contribution doctrine or about applying it in the lead paint context. In Thomas, the Wisconsin Supreme Court explained at great length why this was so. The court first pointed out that a plaintiff who has been severely harmed by ingesting white lead carbonate pigment may be entirely innocent and will likely also be unable to prove which manufacturer produced the particular batch of pigment that injured him. Thomas, 285 Wis. 2d at 306. The court then noted that all white lead carbonate pigment

3

was functionally interchangeable and that by the 1920s the pigment manufacturers knew or should have known of the harm that their product caused but nevertheless continued to manufacture and promote it. Id. at 307-308. The court went on to explain that as participants in the lead pigment market the manufacturers likely had more information or access to information than the plaintiff and concluded that it was fair and reasonable to modify the burden of proof accordingly. Id. at 308, 309 n. 46.

In addition to not being arbitrary or irrational, the risk contribution doctrine affords a lead paint defendant an opportunity to contest the prima facie case as well as the opportunity to rebut the presumption that flows from a prima facie case. For example, a defendant can eviscerate a plaintiff's prima facie case by showing that the plaintiff could have been harmed by lead from a source other than paint. This is apparently what happened in Thomas after the Wisconsin Supreme Court remanded the case. In addition, a defendant can rebut the presumption created by a prima facie case by showing that it did not produce white lead carbonate pigment during the relevant time period or in the relevant geographical market. Defendants argue that in the present case they will not have an opportunity to rebut because of the long time span during which the pigment that caused plaintiff's injuries could have been manufactured and because they lack records of transactions occurring years ago. However, as the Thomas court explained, a lead paint defendant is in a better position than an injured plaintiff to present evidence relating to its own past operations. Moreover, as between an innocent plaintiff and a defendant who reasonably could have contributed to the plaintiff's injury, it is fairer to place such burden on the defendant. In addition, the risk contribution doctrine gives a lead paint defendant the opportunity to show that even though it may have contributed to the risk that the

4

plaintiff would be injured, for any number of reasons as, for example, that it was less culpable than other defendants or that it had a smaller market share, it did so to a lesser extent than others and thus should be held responsible for a lesser portion of the damages.

Insofar as it modifies the traditional burden of proof, the risk contribution doctrine is not unique. Common law courts have long encountered fact situations where innocent plaintiffs who deserve to be compensated for injuries resulting from the tortious conduct of others face difficult problems of proof. Over time, such courts have balanced the rights of the parties and developed and applied doctrines modifying the traditional burden of proof so as to achieve justice as the Wisconsin Supreme Court did in Collins and Thomas. One example is the doctrine of res ipsa loquitor pursuant to which a jury may infer a defendant's negligence from a plaintiff's injury if it concludes that the injury would not ordinarily occur without negligence on the part of the defendant. As in the case of the risk contribution doctrine, under such circumstances defendant's actions are the most probable cause of plaintiff's injuries. Another example is the doctrine of alternative liability according to which when a plaintiff does not know which one of multiple negligent defendants caused his injury, the defendants bear the burden of establishing causation. See, e.g., Summers v. Tice, 199 P. 2d 1 (Cal. 1948) (shifting the burden to defendants who both negligently fired shots in the plaintiff's direction only one of which hit him).

And courts have routinely upheld modifications of the burden of proof like the risk contribution doctrine against due process challenges. See, e.g., Dick v. New York Life Ins. Co., 359 U.S. 437 (1959) (applying state common law rule requiring insurance company defendant to show that death of insured resulted from suicide); Atlantic C. L. R. Co. v. Ford, 287 U.S. 502, 508-509 (1933) (rejecting due process challenge to statute creating

presumption that railroad company's failure to give crossing signals was proximate cause of accident); United States v. $94,000.00 in United States Currency, 2 F.3d 778, 783-84 (7th Cir. 1993) (rejecting due process challenge to burden of proof in a civil forfeiture proceeding where if the government establishes probable cause for the forfeiture the burden shifts to the owner to prove that the property is not subject to forfeiture); United States v. Santoro, 866 F.2d 1538, 1544 (4th Cir. 1989) (reaching the same result and stating that "Congress may alter the burden of proof in a civil proceeding as it sees fit, without Constitutional implications"); United States v. Jessup, 757 F. 2d 378, 387 (1st Cir. 1985) (rejecting due process challenge to rebuttable presumption in Bail Reform Act of 1984 that a defendant charged with a serious drug offense is a flight risk and danger to the community); Battaglia v. Peabody Coal Co., 690 F.2d 106, 110-112 (7th Cir. 1982) (rejecting due process challenge to presumption of benefit eligibility in Black Lung Benefits Act, 30 U.S.C. § 921(c)(5)).

Defendants next contend that the risk contribution doctrine imposes retroactive liability and thus violates either the Due Process or Takings Clause. This argument fails for a number of reasons. First, the risk contribution doctrine does not impose liability, retroactive or other, nor does it make innocent conduct tortious; it merely modifies the manner in which a plaintiff may prove his case.

Second, defendants fail to cite a single case supporting their contention that a judicially promulgated doctrine relating to the burden of proof in a civil case is vulnerable to a constitutional challenge on retroactivity grounds. Defendants cite only cases involving statutes or judicial decisions in the criminal law area. While retroactive application of a judicial decision attaching criminal penalties to previously innocent conduct involves such

due process concepts as the right to fair warning, Rogers v. Tennessee, 532 U.S. 451, 457-59 (2001), such concerns are not present in the civil context. In the civil context, the "law applicable to a particular case does not turn on 'whether [the litigants] actually relied on [an] old rule [or] how they would suffer from retroactive application of a new one,'" Harper v. Virginia Department of Taxation, 509 U.S. 86, 95 n.9 (1993) (quoting James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 543 (1991)).

Third, even assuming that the risk contribution doctrine imposed retroactive liability and that judicial decisions in the civil law area were subject to constitutional challenge on retroactivity grounds, the doctrine does not violate either the Due Process or Takings Clause. As to the former, a civil statute that imposes retroactive liability will be found to violate due process only if it is "arbitrary and irrational." Usery, 428 U.S. at 15 (holding that black lung compensation scheme satisfied due process because it was a "rational measure to spread the costs of the employee's disabilities to those who have profited from the fruits of their labor"); see also Central States, SE & SW v. Midwest Motor Express, 181 F.3d 799, 806 (7th Cir. 1999) (stating that "when a question of retroactivity is involved" the party claiming a due process violation must show that the provision in question is arbitrary and irrational). As discussed earlier, the Wisconsin Supreme Court explained in great detail in Collins why it adopted the risk contribution doctrine and in Thomas why it applied it in the lead paint context. Nothing about the court's reasoning is arbitrary and irrational. See generally United States v. Monsanto Co., 858 F.2d 160, 174 (4th Cir. 1988) (holding that retroactive liability under Comprehensive Environmental Response, Compensation, and Liability Act of 1980, which allocates to the defendant the burden of disproving causation, comports with due process).

Nor does application of the risk contribution doctrine in the lead paint context constitute an unlawful taking. The Takings Clause of the Fifth Amendment bars the taking of "private property . . . for public use without just compensation." Defendants cite no authority for the proposition that there can be a judicial taking. In Stop the Beach Renourishment, 130 S. Ct. 2592 (2010), four justices supported this idea, not enough to establish a binding precedent. Defendants also fail to identify any private property which would be the subject of a taking. Even if the risk contribution doctrine actually imposed liability, the imposition of general liability does not constitute a taking of private property. McCarthy v. City of Cleveland, 626 F.3d 280, 286 (6th Cir. 2010).

In supporting their retroactivity-based constitutional arguments, defendants rely heavily on Eastern Enterprises v. Apfel, 524 U.S. 498, 537 (1998), which involved a challenge to The Coal Act, a statute that required the plaintiff company to provide health benefits to workers whom it had not employed for many years. The Court found the law unconstitutional, stating that when Congress "singles out certain employers to bear a burden . . . unrelated to any commitment that the employers made or to any injury they caused, the governmental action implicates fundamental principles underlying the Takings Clause." Id. at 531. Eastern, however was decided by a four justice plurality. Justice Kennedy concurred, finding that the challenged Act violated the Due Process Clause, and four justices dissented. Thus, the decision is of limited precedential value. See Association of Bituminous Contractors, Inc. v. Apfel, 156 F.3d 1246, 1255 (D.C. Cir. 1998) (stating that "the only binding aspect of [the Eastern plurality decision] is its specific result – holding the Coal Act unconstitutional as applied to Eastern Enterprises").

However, even if <u>Eastern</u> constituted binding precedent, it would not govern the present case. This is so for several reasons. First, as we have seen, unlike The Coal Act, the risk contribution doctrine does not impose liability but merely modifies the manner in which liability may be proved. Second, as also discussed, unlike The Coal Act, which was enacted by Congress, the risk contribution doctrine was developed by a court in the civil law context. Third, critical to <u>Eastern</u> was the fact that five justices concluded that the plaintiff company had not played a part in causing the problem that the legislation was attempting to solve. As a result, those five justices regarded it as unfair to impose a severe economic burden on the company. In contrast, the reason that the Wisconsin Supreme Court determined that the risk contribution doctrine was an appropriate way to address the problem of injuries resulting from lead paint was that a majority of the justices concluded that the manufacturers of white lead carbonate pigment were the principal cause of the problem. The Court made this point clearly in <u>Thomas</u>:

> First, the record makes clear that the Pigment manufacturers "contributed to the *risk* of injury to the public and, consequently, the risk of injury to individual plaintiffs such as" Thomas. Many of the individual defendants or their predecessors-in-interest did more than simply contribute to a risk; they knew of the harm white lead carbonate pigments caused and continued production and promotion of the pigment notwithstanding that knowledge. Some manufacturers, paradoxically, even promoted their nonleaded based pigments as alternatives that were safe in that they did not pose the risk of lead poisoning. For those that did not have explicit knowledge of the harm they were engendering, given the growing medical literature in the early part of the century, Thomas's historical experts, Markowitz and Rosner, submit that by the 1920s the entire industry knew or should have known of the dangers of its products and should have ceased producing the lead pigments, including white lead carbonate. In short, we agree with Thomas that the record easily establishes the Pigment Manufacturers' culpability for, at a minimum, contributing to creating a risk of injury to the public.

<u>Thomas</u>, 285 Wis. 2d at 307-08 (citations omitted).

Citing several cases involving punitive damages, defendants next argue that use of the risk contribution doctrine by plaintiff would violate due process because it would require them to pay damages for harms caused by others. This argument is merely a rephrasing of defendants' argument that the risk contribution doctrine is arbitrary and irrational, and it fails for the same reasons. As discussed, the risk contribution doctrine does not impose liability or the obligation to pay damages on defendants. If any defendants are found liable, damages are apportioned according to comparative negligence, a time honored and perfectly constitutional concept. Thomas, 285 Wis. 2d at 322 n. 52. And punitive damages are unavailable in risk contribution cases.

Lastly, defendants argue that allowing plaintiff to use the risk contribution doctrine would discriminate against and burden interstate commerce because at present there apparently are no white carbonate pigment manufacturers or successors thereof in Wisconsin. Defendants' argument fails for several reasons. First, it is unlikely that the dormant Commerce Clause even applies to a judicial decision interpreting a state's tort law. Secondly, defendants present no evidence that the Wisconsin Supreme Court's decision in Thomas was anything other than an even-handed effort to protect a legitimate public interest with only the most incidental impact on interstate commerce.

Therefore, for the reasons stated, defendants' motion for summary judgment will be denied. Defendants have not shown that allowing plaintiff to proceed under the risk contribution doctrine would violate any of their constitutional rights. However, I will also deny plaintiff's motion for partial summary judgment. While it is unlikely that further factual development will add anything to defendants' constitutional arguments, I will not foreclose defendants from asserting them if a basis for doing so emerges. Finally, I will grant the

parties' request to stay proceedings pending plaintiff's appeal of <u>Gibson v. Am. Cyanamid Co.</u>, 719 F. Supp. 2d 1031 (E.D. Wis. 2010).

**THEREFORE, IT IS ORDERED** that plaintiff's motions for summary judgment are **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motions for summary judgment are **DENIED**.

**FINALLY, IT IS ORDERED** that defendant's motions for leave to file and to stay proceedings are **GRANTED**.

Dated at Milwaukee, Wisconsin this 5th day of April, 2011.

/s_____
LYNN ADELMAN
District Judge