UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

GLENN BURTON, JR.,
        Plaintiff,

v.                                                 Case No. 07-cv-0303

AMERICAN CYANAMID, et al.,
        Defendants;

RAVON OWENS,
        Plaintiff,

v.                                                 Case No. 07-cv-0441

AMERICAN CYANAMID, et al.,
        Defendants;

ERNEST GIBSON,
        Plaintiff,

v.                                                 Case No. 07-cv-0864

AMERICAN CYANAMID, et al.,
        Defendants;

BRIONN STOKES,
        Plaintiff,

v.                                                 Case No. 07-cv-0865

AMERICAN CYANAMID, et al.,
        Defendants;

CESAR SIFUENTES,
        Plaintiff,

v.                                                 Case No. 10-cv-0075

AMERICAN CYANAMID, et al.,
        Defendants;

MANIYA ALLEN, et al.,

|                               |                          |
|-------------------------------|--------------------------|
| **Plaintiffs,**               |                          |
| v.                            | Case No. 11-cv-0055      |
| **AMERICAN CYANAMID, et al.,**|                          |
| **Defendants;**               |                          |
| **DEZIREE VALOE, et al.,**    |                          |
| **Plaintiffs,**               |                          |
| v.                            | Case No. 11-cv-0425      |
| **AMERICAN CYANAMID, et al.,**|                          |
| **Defendants;**               |                          |
| **DIJONAE TRAMMELL, et al.,** |                          |
| **Plaintiffs,**               |                          |
| v.                            | Case No. 14-cv-1423      |
| **AMERICAN CYANAMID, et al.,**|                          |
| **Defendants.**               |                          |

_____

## DECISION AND ORDER

Plaintiffs, who allege being harmed as the result of ingesting lead paint as children, bring these negligence and failure to warn actions against defendant companies which manufactured or sold lead paint. Defendants now present several motions.

### I. Personal Jurisdiction

Defendants argue that I lack personal jurisdiction over them because plaintiffs cannot sufficiently connect any of their Wisconsin contacts with plaintiffs' alleged injuries. Before considering this issue, I address plaintiffs' argument that defendants waived it by failing to raise it in their previous Fed. R. Civ. P. 12(b)(6) motions. Defendants did not waive the issue because, in 2011, when they filed their original motions, the argument they

2

make was unavailable. This is so because *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), on which defendants rely had not yet been decided. Defendants also timely filed their motions having done so soon after the stay resulting from the appeal of Judge Randa's decision in *Gibson v. American Cyanamid Co.* was lifted.

Turning now to the merits, plaintiffs have the burden of proving personal jurisdiction, but the burden is not a heavy one. *Kubin-Nicholson Corp. v. Gillon*, 525 F. Supp. 2d 1071, 1073 (E.D. Wis. 2007). They need only make a prima facie showing, and I draw all reasonable inferences in their favor. *Id.* Plaintiffs may establish either general or specific jurisdiction. They concede that they cannot establish general jurisdiction because defendants are not incorporated or headquartered in Wisconsin and are not effectively "at home" here. *Daimler*, 134 S. Ct. at 754. With respect to specific jurisdiction, I look first to Wisconsin law. *See* Fed. R. Civ. P. 4(k)(1)(A); *Daimler*, 134 S. Ct. at 753. Under Wisconsin's long-arm statute, Wis. Stat. § 801.05, specific jurisdiction typically exists when the litigation arises out of a defendant's contact with Wisconsin. *Kubin-Nicholson Corp.*, 525 F. Supp. 2d at 1073. Additionally, specific jurisdiction exists when an injury arises

> "out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either: (a) solicitation or service activities where carried on within this state by or on behalf of the defendant; or (b) Products, materials or things processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

§ 801.05(4). Defendants concede that plaintiffs' jurisdictional allegations satisfy the long arm statute.

The exercise of personal jurisdiction, however, must also comport with due process, and defendants dispute that it does. To resolve this issue, I ask whether "the relationship

3

among the defendant, the forum, and the litigation" warrants haling defendants into a Wisconsin court. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1976). I may exercise specific jurisdiction over defendants consistent with due process if (1) defendants "purposefully directed [their] activities at residents of" Wisconsin and (2) "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotations and citations omitted); *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). I must also find that the exercise of specific jurisdiction comports "with traditional notions of fair play and substantial justice." *Id.*

Defendants do not dispute that they purposefully directed at least some of their activities at residents of Wisconsin, *see, e.g., Allen v. Am. Cyanamid*, No. 11-cv-055, E.I. DuPont's Br. in Supp. at 1 (ECF No. 75) ("DuPont regularly conducts business in Wisconsin."); Atlantic Richfield's Br. in Supp. at 8 (ECF No. 77) ("Atlantic Richfield conducted regular and systematic business within Wisconsin."); Sherwin-Williams' Br. in Supp. at 1–2 (ECF No. 79) ("Sherwin-Williams has had stores and employees in Wisconsin since the 1930s."). They do dispute, however, that plaintiffs' alleged injuries arose out of or relate to their Wisconsin activities. Specifically, they argue that plaintiffs must show a causal connection between each individual defendant's Wisconsin contacts and plaintiffs' injuries, *see Tamburo v. Dworkin*, 601 F.3d 693, 708–09 (7th Cir. 2010) (discussing the need to show some causal connection between state-aimed conduct and a plaintiff's injury in an intentional tort case). Defendants argue that the fact that plaintiffs rely on the risk contribution theory of liability set forth in *Thomas v. Mallett*, 285 Wis. 2d 236, 320 (2005),

4

which requires plaintiffs to prove not which particular defendant's product caused a plaintiff's injuries but only that a particular defendant contributed to the risk of injury to the public, constitutes an acknowledgment that plaintiffs cannot show the requisite causal connection. Essentially, defendants contend that the nexus between an individual defendant's conduct and an individual plaintiff's injuries is insufficiently close to establish specific personal jurisdiction.

On the contrary, I conclude that the connection between defendants' Wisconsin conduct and plaintiffs' alleged injuries is sufficiently close to justify the exercise of specific personal jurisdiction. As stated, plaintiffs allege that defendants purposefully targeted Wisconsin for the sale and consumption of lead-based paint while at the same time failing to make consumers aware of the dangers of their product.[1] Plaintiffs further allege that such failure resulted in their injuries. Thus, plaintiffs allege a substantial, direct, and litigation-specific connection, namely that defendants' wrongful Wisconsin conduct caused their injuries.

That the individual plaintiffs cannot say which defendant produced the paint that injured them does not defeat this analysis. In determining whether a claim arises out of or is related to a defendant's Wisconsin conduct, I look at the nature of the claim. *See, e.g.*, *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (defining "arises out of or relates to" in a breach of contract case as requiring a showing that "the dealings between the parties in regard to the disputed contract" occur within the forum); *Tamburo*,

---

[1] See *Thomas*, 285 Wis. 2d at 259–89 (2005), for a detailed account of the history of the paint industry's promotion of lead-based paint in Wisconsin and its knowledge of health risks associated with lead-based paint.

5

601 F.3d at 708–09 (stating that in an intentional tort case a plaintiff must show some causal connection between a defendant's Wisconsin contacts and his injury). In other words, to establish specific jurisdiction, plaintiffs must link defendants' Wisconsin contacts with "the allegedly tortious activity," *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), and the tortious activity is defined by the underlying nature of the claim. Here, Wisconsin's risk contribution theory of liability under which plaintiffs proceed defines the tortious activity as "contribut[ing] to the *risk* of injury to the public" by producing or marketing lead paint products. *See Thomas*, 285 Wis. 2d 236. Thus, to establish personal jurisdiction, plaintiffs need only link defendants' Wisconsin contacts to contributing to the risk of injury.

Defendants attempt to analogize this case to intentional tort cases in which the Seventh Circuit requires a causal link between a defendant's Wisconsin contacts and a plaintiff's injury. However, the attempt fails because this is not an intentional tort case. Moreover, in lead paint litigation, the Wisconsin supreme court explicitly relaxed the causation standard, *see Gibson v. Am. Cyanamid Co.*, 760 F.3d 600, 614 (7th Cir. 2014) (describing the *Thomas* decision as "relaxing the traditional cause-in-fact requirement."), and the Seventh Circuit recently held that this relaxed causation standard comports with due process, *id.* (stating that "the federal Constitution gives a wide berth to state (and local) laws"). I cannot reasonably conclude that, while defendants can be found liable under Wisconsin's relaxed causation standard without violating due process, they cannot be subjected to personal jurisdiction based on identical allegations of causation. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (rejecting a constitutional interpretation that

6

would lead to an absurd result). It may well be that plaintiffs bringing claims with stricter causation requirements, such as traditional intentional tort claims, must allege a more individualized causal connection to establish personal jurisdiction. In the present cases, however, it would make no sense to require plaintiffs to allege more in the way of causation to establish specific jurisdiction than they must to establish liability.

Exercising personal jurisdiction over defendants is also consistent with fair play and substantial justice. In considering this issue, I weigh the burden on defendants of litigating in Wisconsin against such factors as Wisconsin's interest in adjudicating the dispute, plaintiffs' interest in obtaining convenient and effective relief, the interest of the interstate judicial system in resolving controversies in the most efficient way, and the states' shared interest in furthering fundamental social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Here, the burden on defendants, all of which are large corporations which have been litigating lead paint cases in Wisconsin for years, is not heavy. In contrast, the burden on plaintiffs, individuals who suffer varying degrees of disability allegedly the result of lead paint poisoning and who have limited financial means, of having to litigate their claims against each defendant in each defendant's "home" state would be extremely heavy. Further, Wisconsin has a strong interest in adjudicating claims regarding injuries that occurred here, an interest in part reflected in its relaxation of the causation requirement in lead paint cases. Were I to adopt defendants' view that plaintiffs cannot show specific jurisdiction in cases involving the risk contribution theory of liability, I would effectively preclude lead paint litigation in Wisconsin and thus nullify the state's expressed interest in providing relief in such cases. Further, each plaintiff would have to file a separate claim against each defendant in another state or states rather than bringing

7

a consolidated action in Wisconsin, a highly inefficient result.

Plaintiffs' complaint alleges that all defendants "manufactured, processed, marketed, promoted, supplied, distributed and/or sold white lead carbonate pigments for use in residential paints and coatings in the State of Wisconsin." *See, e.g.*, *Allen v. Am. Cyanamid Co.*, No. 11-cv-055, Second Am. Compl. at 79–80 (ECF No. 66). This allegation is sufficient to establish a connection between defendants' Wisconsin contacts–manufacturing, marketing, or distributing lead paint in Wisconsin–and the alleged tortious activity–contributing to the risk of injury in Wisconsin. E.I. DuPont and Armstrong Containers do not contest the allegation. Thus, I conclude that I have personal jurisdiction over these defendants.

Sherwin-Williams admits that it shipped white lead in oil to its Milwaukee warehouse, *see, e.g.*, *Allen v. Am. Cyanamid Co.*, No. 11-cv-055, Sherwin-Williams' Supplemental Br. at 5 (ECF No. 150), and that it sold paint at its Sherwin-Williams stores in Wisconsin for decades and that paint may have contained lead. *Id.* These Wisconsin contacts, the marketing and sale of lead paint in Wisconsin, are sufficient to connect Sherwin-Williams to contributing to the risk of injury from lead paint in Wisconsin.

Atlantic Richfield argues that it never manufactured, marketed, or distributed lead paint products in Wisconsin. However, plaintiffs present evidence that an Atlantic Richfield's predecessor[2] sold lead paint materials in Wisconsin. *See, e.g.*, *Allen v. Am. Cyanamid Co.*, No. 11-cv-055*,* Kalt Decl. Ex. 28 at 6 (ECF No. 144-3) (company representative testifying that it sold white lead in oil in Wisconsin); Pls.' Supplemental Br.

---

[2] Atlantic Richfield disputes that it is a successor to some of the companies identified but concedes that this is immaterial for purposes of deciding this issue.

8

Ex. 1 at 8–9 (ECF No. 158-1) (proposed findings of fact by predecessor before the Federal Trade Commission stating that "[it] never sold white lead-in-oil by consignment contract except in the State of Wisconsin"). These documents also show that the predecessor used particular types of sales agreements "to protect it under the state law covering the insolvency of vendors." *Id.* Thus, plaintiffs make a prima facie case that a predecessor sold lead paint in Wisconsin and that it availed itself of the laws of Wisconsin.

American Cyanamid argues that its connection to Wisconsin is too attenuated to support personal jurisdiction. A defendant cannot be "haled into a jurisdiction solely as a result of "random', fortuitous," or attenuated" contacts or of the "unilateral activity of another party or third person.'" *See Burger King Corp.,* 171 U.S. at 475. Rather, a defendant must "purposefully avail] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd., v. Nicastro*, 131 S. Ct. 2780, 2787-88 (2011). Under certain circumstances, exercising specific jurisdiction over a corporation is appropriate where it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp.,* 444 U.S. at 297-98. A defendant, however, must do more than simply place a product into the stream of commerce. Rather, some purposeful act directed at the forum state is required. *See J. McIntyre Mach.* Ltd., 131 S. Ct. at 2788, 2790 (Kennedy, J.) (concluding that "purposeful availment" in the form of "target[ing] the forum" is required under the stream of commerce theory); *id.* at (Breyer, J., concurring) (rejecting the idea that "a producer is subject to jurisdiction . . . so long as it knows or reasonably should know that its products are distributed through a nationwide

9

distribution system that *might* lead to those products being sold in any of the fifty states"); *Asahi Metal Indus. Co., Ltd. v. Superior Ct. Of Cal.,* 480 U.S. 102, 111–12 (1987) (O'Connor, J.) (requiring "something more than that the defendant was aware of its product's entry into the forum State through the stream of commerce"); *see also Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 n.2 (7th Cir. 2004) (noting that *Asahi* "left open the question whether a plaintiff making a stream-of-commerce argument needs to make an additional showing that the defendant purposefully directed its business activities at the forum state").

In the present case, plaintiffs present evidence that American Cyanamid purchased a Chicago plant that produced lead pigment, and that it agreed to continue the company's practice of selling the pigment to the manufacturer of Scotch Laddie lead paint. Plaintiffs also make a prima facie showing that American Cyanamid purchased the lead pigment plant in anticipation of producing lead pigment for use in residential paint to be sold in Wisconsin. With respect to American Cyanamid's intent to supply lead pigment for use in Scotch Laddie paint, as part of the purchase agreement for the lead pigment plant, American Cyanamid agreed to sell 1.86 million pounds of lead pigment to the manufacturer of Scotch Laddie paint. *See, e.g.*, *Allen v. Am. Cyanamid*, No. 11-cv-055, Markowitz Decl. at 2 (ECF No. 134-2). With respect to American Cyanamid's targeting of the markets where Scotch Laddie paint was sold, including Wisconsin, the evidence indicates that when deciding whether to purchase the plant, American Cyanamid studied the municipal and state legislation regarding lead paint in those markets and that it evaluated the revenue stream that Scotch Laddie paint generated. *Id.* at 3. The evidence also indicates at the time

10

American Cyanamid was researching Scotch Laddie's distribution chain and revenue stream, one of the markets in which Scotch Laddie paint was distributed was Wisconsin, and that the Wisconsin distribution chain included six outlets in Milwaukee alone. *Id.* at 3–4. Based on these facts, and drawing all inferences in favor of plaintiffs as I must, it is reasonable to infer that when it purchased the lead pigment plant and agreed to sell large amounts of lead pigment to Scotch Laddie, American Cyanamid knew that Scotch Laddie paint generated considerable revenue in Wisconsin. Finally, American Cyanamid's sale of lead pigment for use in Scotch Laddie paint was continuous and not isolated. *Id.* Thus, American Cyanamid did not merely put lead pigment into the stream of commerce. Rather its purchase of the lead pigment plant in Chicago and its subsequent sale of lead pigment for use in Scotch Laddie paint constituted conduct purposefully directed at profiting from an established distribution channel of lead paint that included Wisconsin. This is sufficient to warrant the exercise of specific jurisdiction in Wisconsin.

**II. Misjoinder**

Defendants also ask me to dismiss or sever all but the named plaintiff in the *Allen* case arguing that the other plaintiffs were improperly joined. Joinder is permissible if (1) plaintiffs assert a joint right to relief or their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and (2) there is a common question of law or fact. Fed. R. Civ. P. 20(a)(1). "Misjoinder of parties is not a ground for dismissing an action," but I may drop or sever improperly joined plaintiffs. Fed. R. Civ. P. 21. In considering defendants' motion, I consider such factors as judicial economy and fundamental fairness. *See Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696

11

F.2d 53, 57 (7th Cir. 1982); *Holbein v. Heritage Mut. Ins. Co.*, 106 F.R.D. 73, 78 (E.D. Wis. 1985) ("The unmistakeable purpose for the [joinder] Rule is to promote trial convenience through the avoidance of multiple lawsuits, extra expense to the parties, and loss of time to the Court and the litigants appearing before it.").

Plaintiffs' claims are sufficiently connected to allow the case to proceed in its present form. Plaintiffs allege that their injuries constitute a series of occurrences all arising out of defendants' negligent manufacturing, promotion, and sale of lead-based paint. Plaintiffs' claims also present the common question of whether defendants are liable under the risk contribution theory. Further, joinder is convenient to the parties, promotes efficient resolution of the case, and does not prejudice defendants. Requiring plaintiffs to file 160 new cases four years after they commenced this action would not facilitate prompt resolution of the case. It would surely make management of the matter more unwieldy. For example, each of the 5 defendants filed a motion to dismiss for personal jurisdiction in each of the 7 pending cases. If the *Allen* plaintiffs had been severed, the result would have been 835 separate motions before at least 4 different judges. I recognize that individual discovery and separate trials will likely be required. However, these things can be accomplished without the disadvantages attendant to dismissal or severance.

### III. Failure to State a Claim

Defendants Sherwin-Williams and Armstrong Containers also move to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) in the *Allen* and *Trammell* cases. Alternatively, they request a more definite statement under

12

Fed. R. Civ. P. Rule 12(e).[3] Sherwin-Williams argues that plaintiffs' complaint does not include individualized pleadings relating to each defendant or sufficient information about each plaintiff to state a claim. Armstrong joins these arguments and also asks that I dismiss plaintiffs' negligence claim because of the absence of facts indicating that it breached a duty of care. To survive a Rule 12(b)(6) motion, plaintiffs must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept the complaint's factual allegations as true, but allegations in the form of legal conclusions are insufficient. *Id.*

Plaintiffs' negligence claim requires that plaintiffs establish that (1) they ingested lead paint; (2) it caused their injuries; (3) defendants produced or marketed the type of paint that plaintiff ingested; and (4) defendants' conduct in producing the paint constituted a breach of a legally cognizable duty to plaintiff. *Thomas*, 285 Wis. 2d at 320. Plaintiffs' complaint alleges that each plaintiff ingested lead paint; the address of the residence where each plaintiff did so; when plaintiff lived at that residence; each plaintiff's peak elevated blood level; and that each plaintiff's ingestion of paint caused lead poisoning. This is sufficient to allege the first two elements. Plaintiffs also allege that "American Cyanamid, Armstrong, DuPont, NL Industries, ARCO, and Sherwin-Williams . . . manufactured, processed, marketed, promoted, supplied, distributed and/or sold" lead paint products in

---

[3] Armstrong only filed its motion in the *Allen* case because it is not named in the *Trammell* case. However, I address the *Allen* and *Trammell* motions to dismiss or for a more definite statement together because Sherwin-Williams raises the same arguments in both.

13

Wisconsin. *See, e.g.*, *Allen v. Am. Cyanamid Co.*, No. 11-cv-055, Second Am. Compl. at 79–80 (ECF No. 66). That plaintiffs make the allegation against defendants collectively rather than individually does not in any way weaken it. The allegation is sufficient to support the inference that defendants could have produced or manufactured the paint that plaintiffs ingested. Finally, plaintiffs allege that defendants knew or should have known that lead paint was harmful to children and they continued to manufacture, promote, and sell it and failed to warn plaintiffs about its potential harm. This allegation sufficiently alleges that defendants breached their duty of care.[4] In sum, plaintiffs put defendants on notice of the claims against them. Plaintiffs need not prove their case at the pleading stage. Thus, defendants' motions will be denied.

### IV. Conclusion

**THEREFORE, IT IS ORDERED** that defendant E.I. DuPont de Nemours' motions to dismiss for lack of personal jurisdiction (No. 11-cv-055, ECF No. 74; No. 07-cv-0303, ECF No. 256; 07-cv-0441, ECF No. 225; 07-cv-0864, ECF No. 238; No. 07-cv-0865, ECF No. 203; No. 10-cv-075, ECF No. 129; No. 11-cv-0425, ECF No. 56; No. 14-cv-1423, ECF No. 7) are **DENIED**.

**IT IS FURTHER ORDERED** that defendant Atlantic Richfield's motions to dismiss for lack of personal jurisdiction (No. 11-cv-055, ECF No. 76; No. 07-cv-0303, ECF No. 249; 07-cv-0441, ECF No. 216; 07-cv-0864, ECF No. 232; No. 07-cv-0865, ECF No. 196; No. 10-cv-075, ECF No. 122; No. 11-cv-0425, ECF No. 49; No. 14-cv-1423, ECF No. 9) are **DENIED**.

---

[4] Again, the fact that plaintiffs make the allegation against defendants collectively does not render it insufficient.

**IT IS FURTHER ORDERED** that defendant Sherwin-Williams' motions to dismiss for lack of personal jurisdiction (No. 11-cv-055, ECF No. 78; No. 07-cv-0303, ECF No. 259; 07-cv-0441, ECF No. 228; 07-cv-0864, ECF No. 230; No. 07-cv-0865, ECF No.206; No. 10-cv-075, ECF No. 132; No. 11-cv-0425, ECF No. 59; No. 14-cv-1423, ECF No. 12) are **DENIED**.

**IT IS FURTHER ORDERED** that defendant American Cyanamid's motions to dismiss for lack of personal jurisdiction (No. 11-cv-055, ECF No. 85; No. 07-cv-0303, ECF No. 252; 07-cv-0441, ECF No. 221; 07-cv-0864, ECF No. 235; No. 07-cv-0865, ECF No. 199; No. 10-cv-075, ECF No. 125; No. 11-cv-0425, ECF No. 52; No. 14-cv-1423, ECF No. 16) are **DENIED**.

**IT IS FURTHER ORDERED** that defendant Armstrong Containers' motions to dismiss for lack of personal jurisdiction (No. 11-cv-055, ECF No. 89; No. 07-cv-0303, ECF No. 261; 07-cv-0441, ECF No. 230; 07-cv-0864, ECF No. 242; No. 07-cv-0865, ECF No. 208; No. 10-cv-075, ECF No. 134; No. 11-cv-0425, ECF No. 61) are **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss or sever (No. 11-cv-055, ECF No. 81) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant Sherwin-Williams' motions to dismiss or for more definite statement (No. 11-cv-055, ECF No. 83; No. 14-cv-1423, ECF No. 14) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant Armstrong Containers' motion to dismiss or for more definite statement (No. 11-cv-055, ECF No. 91) is **DENIED**.

Dated at Milwaukee, Wisconsin this 15th day of September, 2015.

                                    s/ Lynn Adelman
                                    _____
                                    LYNN ADELMAN
                                    District Judge

16

Case 2:07-cv-00303-LA   Filed 09/15/15   Page 16 of 16   Document 327