# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**GLENN BURTON, JR.,**
   **Plaintiff,**

 v.                  Case No. 07-CV-0303

**AMERICAN CYANAMID et al.,**
   **Defendants;**

**RAVON OWENS,**
   **Plaintiff,**

 v.                  Case No. 07-CV-0441

**AMERICAN CYANAMID et al.,**
   **Defendants;**

**CESAR SIFUENTES,**
   **Plaintiff,**

 v.                  Case No. 10-CV-0075

**AMERICAN CYANAMID et al.,**
   **Defendants.**

---

## ORDER

Plaintiffs bring these negligence and failure to warn actions against various lead paint and pigment manufacturers alleging they were harmed by ingesting lead paint as children. Plaintiffs sue Defendant Atlantic Richfield Corporation ("ARCO") as successor in liability to four now-defunct corporations: International Smelting and Refining Company ("IS&R"), Anaconda Lead Products Company ("ALPC"), The Anaconda Company (formerly known as Anaconda Copper Mining Company and identified

hereinafter as "ACMC"), and Anaconda Sales Company ("ASC").[1] ARCO now moves for partial summary judgment on the issue of its status as successor in liability to these corporations.

As a matter of context, I note that the parties are in agreement on several key issues. First, they agree that ARCO is successor in liability to both ACMC and IS&R. IS&R merged into ACMC in 1973, making ACMC the successor to IS&R's liabilities; ACMC then merged into ARCO in 1981, making ARCO the successor to ACMC's liabilities (including those derived from IS&R). Second, they agree that ACMC did not itself make or sell white lead carbonate pigment, meaning that ACMC's potential liabilities in this case are limited to those to which it succeeded from IS&R.

The parties also agree that ARCO is not a direct successor in liability to ASC. To the extent that ARCO is liable for acts of ASC, such liability derives from ASC's status as an agent of IS&R or ALPC. ARCO does not dispute that it succeeded to the liabilities of IS&R, which include any liabilities that IS&R might have had for acts of ASC as its agent. If ARCO is found to have succeeded to the liabilities of ALPC, such liabilities might include those that ALPC might have had for acts of ASC as its agent.

Thus, the critical issue for summary judgment is ARCO's status as successor to the liabilities of ALPC. Plaintiffs allege that IS&R succeeded to ALPC's liabilities when IS&R purchased ALPC and shortly thereafter dissolved it and took ownership of its assets in October of 1936; these liabilities would then have been passed on from IS&R

---

[1] Plaintiffs' complaints also identified International Lead Refining Company ("ILRC") as an alleged predecessor in liability to ARCO; however, plaintiffs have since stated that they "will not pursue successor liability for ARCO based on the activity of ILRC, as any such liability would be cumulative of the liability of ALPC and IS&R." No. 10-cv-0075, ECF No. 884 at 3.

2

to ACMC and ultimately to ARCO. ARCO now argues that IS&R's purchase and subsequent dissolution of ALPC was an arms-length transaction involving no transfer of liability. I am to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I find that ARCO has not satisfied this standard.

### I. FACTS

When I consider a motion for summary judgment, I am to treat the evidence of the non-movant as true and draw all reasonable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With that directive in mind, the facts of the 1936 transactions are as follows.

Prior to June 1936, ACMC was a publicly held corporation engaged in a variety of metals-related businesses. IS&R was at that time a wholly-owned subsidiary of ACMC, with lead, zinc and copper operations in several states. ACMC also owned 89% of ALPC's shares. ALPC had been operating a lead pigment manufacturing plant in East Chicago, Indiana for more than a decade. In June 1936, ACMC acquired all remaining shares in ALPC, making ALPC its wholly-owned subsidiary.

On September 28, 1936, ACMC offered to sell 13,650 shares of ALPC stock to IS&R in exchange for 13,500 shares of IS&R stock. This offer was accepted on October 1, 1936, and IS&R acquired the shares, becoming the owner of 100% of ALPC's outstanding stock. Then, on October 27, 1936, the IS&R board of directors passed a resolution authorizing the dissolution of ALPC. The following day, the ALPC Board of Directors and shareholder approved a plan that provided for the dissolution of

3

the company and the distribution of all its assets, including the lead pigment manufacturing facility in East Chicago, to its sole shareholder, IS&R. An accounting ledger produced by ARCO dated Oct. 31, 1936 states the following: "Anaconda Lead Products Company was dissolved, its assets and liabilities transferred to International Smelting and Refining Company and its capital stock cancelled."

Notably, when these transactions took place in 1936, there was substantial overlap in the boards of directors and officers of ALPC, IS&R and ACMC. C.F. Kelly was a director of all three companies, as well as President of ACMC and IS&R; R.E. Dwyer was a director all three companies, as well as Vice President and Treasurer of ACMC and President of ALPC; DB Hennessy was a director of ALPC and IS&R, as well as Secretary and Assistant Treasurer of ACMC; J.R. Hobbins was a director of IS&R and ACMC, as well as Executive Vice President of ACMC; James Dickson was a director of ALPC and General Auditor of ACMC; Frederick Laist was a director of ALPC and IS&R, as well as Vice President of ALPC and Vice President of IS&R.

Following the dissolution of ALPC, IS&R continued operations at the East Chicago facility, producing the same lead products under the same trade names. IS&R continued to operate that East Chicago facility until 1946.

## II. SUCCESSOR LIABILITY

When a federal court sits in diversity jurisdiction pursuant to 28 U.S.C. § 1332, as here, it applies state substantive law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426 (1996); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Therefore, to decide which state's substantive law to apply to the merits of the case, I look to

4

Wisconsin choice of law rules. However, I need not apply choice of law rules at all unless the parties point to an outcome-determinative difference among potentially applicable state laws. *Ziolkowski v. Caterpillar*, Inc., 800 F.Supp. 767, 778 (E.D.Wis.1992). In the present case, both parties treat Wisconsin law as applicable and neither has identified any outcome determinative conflicts between the laws of Wisconsin and the laws of any other state. Therefore, I will apply Wisconsin law.

In general, under Wisconsin law the purchaser of a corporation's assets does not succeed to its liabilities. *See Fish v. Amsted Indus., Inc.*, 126 Wis.2d 293, 298, 376 N.W.2d 820 (1985); *see also generally Gallenberg Equip., Inc. v. Agromac Int'l, Inc.*, 10 F.Supp.2d 1050 (E.D.Wis.1998). Therefore IS&R did not succeed to ALPC's liabilities when it purchased ALPC's stock and then dissolved ALPC in 1936, unless an exception to the successor liability rule applies. Wisconsin recognizes four exceptions to the general rule:

> (1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations.

*Fish* at 298, 376 N.W.2d 820 (quoting *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir.1977)). Plaintiffs argue that any one of the first three exceptions applies to

IS&R's purchase of ALPC. Because I find that a triable issue of fact exists as to whether this transaction was a *de facto* merger, I need not address the other exceptions.

"When interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011). If the state's supreme court has not yet addressed the issue, the federal court should "consult and follow the decisions of intermediate appellate courts" to predict how the supreme court would act given the chance, unless "there is a convincing reason to predict the state's highest court would disagree." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012). And absent "any authority from the relevant state courts, [the federal court] ... shall examine the reasoning of courts in other jurisdictions addressing the same issue and applying their own law for whatever guidance about the probable direction of state law they may provide." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007).

The Wisconsin Supreme Court has not expressly adopted a test for whether a transaction is a de facto merger. In *Sedbrook v. Zimmerman Design Group, Ltd.*, 190 Wis.2d 14, 20–21, 526 N.W.2d 758 (Ct.App.1994), the Wisconsin Court of Appeals adopted a four-factor analysis used by other courts in determining whether a corporate asset purchase may be considered a de facto merger, such that the merger exception to the nonliability rule will apply:

> (1) the assets of the seller corporation are acquired with shares of the stock in the buyer corporation, resulting in a continuity of shareholders; (2) the seller ceases operations and dissolves soon after the sale; (3) the buyer continues the enterprise of the seller corporation so that there is a

6

continuity of management, employees, business location, assets and general business operations; and (4) the buyer assumes those liabilities of the seller necessary for the uninterrupted continuation of normal business operations.

Id. at 20–21, 526 N.W.2d 758 (citing Parson v. Roper Whitney, Inc., 586 F.Supp. 1447, 1449 (W.D.Wis.1984). Invoking the Wisconsin Supreme Court's earlier decision in *Fish*, the Court of Appeals further stated that "the key element in the analysis is whether the sale was for stock rather than cash." *Sedbrook,* 190 Wis. 2d at 21-22, 526 N.W.2d 758; *also see Fish*, 126 Wis.2d at 301, 376 N.W.2d 820.

Though it is not binding on Wisconsin courts, the Court of Appeals' subsequent unpublished opinion in *Treuber v. Neuman Machine Co., Inc.*, 235 Wis.2d 275, 616 N.W. 2d 524, 2000 WL 375209 (Wis. Ct. App., 2000) (Roggensack, J.) offers additional guidance as to the Wisconsin Supreme Court's likely application of successor liability doctrine. In *Treuber,* the defendant corporation argued that exceptions to the general rule of successor nonliability cannot apply where the stock of a corporation is purchased, rather than the assets. *Id.* at 8. The Court of Appeals rejected this argument on grounds that it was incompatible with the underlying policy of successor corporation liability that businesses should not be able to escape liability for the manufacture of defective products merely through corporate transformations. *Id. (citing Tift v. Forage King Indus., Inc.,* 108 Wis.2d 72, 77, 322 N.W.2d 14, 16 (1982)*.* Thus the court concluded that "when one corporation purchases all the stock in another corporation and subsequently purchases all the assets of that corporation and also continues to

operate the business of the corporation whose stock and assets were purchased, it is possible for successor corporation liability to arise." *Trueber,* 2000 WL 375209 at 8.

### III. ANALYSIS

Plaintiffs argue that all four *Sedbrook* factors have been met in this case: consideration for the purchase of ALPC was 13,500 shares of IS&R stock issued to ALPC's shareholder; ALPC was dissolved less than a month after the sale; IS&R continued to manufacture the white lead products formerly manufactured by ALPC, under the same trademarks and trade names, using the same facility and employees, with significant continuity of directors and officers; and a contemporaneous ledger entry indicates that ALPC's liabilities were transferred to IS&R at the time that ALPC was dissolved.

ARCO disagrees that the *de facto* merger test has been satisfied. It argues that the key first element – transfer of assets in exchange for stock in the transferee corporation, rather than cash – has not been met because IS&R exchanged its stock for stock in ALPC, rather than for ALPC's assets. As I have indicated, however, based on the Wisconsin Court of Appeals decision in *Treuber,* I am persuaded that the Wisconsin Supreme Court would likely rule that successor liability can arise when the successor corporation purchases all the stock in another corporation and subsequently acquires its assets, provided other conditions of successor liability are met. Thus the fact that IS&R acquired ALPC's stock before acquiring its assets does not bar a finding of *de facto* merger.

8

ARCO also argues that the first Sedbrook factor has not been met because ALPC did not receive IS&R stock in the course of the sale; rather, it was ALPC's shareholder, ACMC, that received IS&R stock in exchange for transferring to IS&R 100% of the stock in ALPC. This argument rests on a misreading of the *Sedbrook* test. *Sedbrook* does not require that the predecessor corporation itself receive stock in the successor corporation in order for the *de facto* merger exception to apply. Indeed, in *Sedbrook* itself, it was the *shareholders* of the predecessor corporation that received stock in the successor, resulting in the finding of a *de facto* merger. 190 Wis. 2d at 22. Here, ALPC's shareholder, ACMC, received stock in the successor, IS&R, resulting in a continuity of shareholders, in accordance with the first *Sedbrook* factor*.*

I am therefore persuaded that a reasonable jury might find that ARCO has succeeded to the liabilities of ALPC on a *de facto* merger theory. For these reasons, **IT IS ORDERED** that American Richfield Corporation's motions for summary judgment (No. 07-cv-0303, ECF No. 543; No. 07-cv-0441, ECF No. 481; No. 10-cv-0075, ECF No. 410) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 11th day of May, 2018.

                                        s/Lynn Adelman
                                        LYNN ADELMAN
                                        District Judge