# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GLENN BURTON, JR.,**
        **Plaintiff,**

   **v.**                                        **Case No. 07-CV-0303**

**AMERICAN CYANAMID et al.,**
        **Defendants;**

**RAVON OWENS,**
        **Plaintiff,**

   **v.**                                        **Case No. 07-CV-0441**

**AMERICAN CYANAMID et al.,**
        **Defendants;**

**CESAR SIFUENTES,**
        **Plaintiff,**

   **v.**                                        **Case No. 10-CV-0075**

**AMERICAN CYANAMID et al.,**
        **Defendants.**

## DECISION AND ORDER

Plaintiffs bring these negligence and failure to warn claims against various manufacturers of white lead carbonate pigment (WLC), alleging that they were harmed by ingesting paint containing WLC when they were children. Each plaintiff further alleges that he or she is unable to identify the manufacturer of the WLC that harmed him or her; in consequence, plaintiffs' substantive claims rely on Wisconsin's risk contribution theory of liability which relaxes the traditional causation standard and requires a plaintiff to prove only that defendants "contributed to the risk of injury to the

public, and, consequently, . . . to the individual plaintiffs." *Thomas ex rel. Gramling v. Mallett*, 285 Wis. 2d 236, 289 (Wis. 2005).

The Wisconsin Supreme Court crafted the risk contribution method of recovery in *Collins v. Eli Lilly Co.,* 116 Wis.2d 166 (Wis. 1984), a case in which the plaintiff had been harmed by *in utero* exposure to the drug diethylstilbestrol (DES) and was unable to identify the specific manufacturer of the DES that harmed her because of the number of manufacturers, the lack of pertinent records, and the passage of time. The *Collins* court noted that the same method of recovery "could apply in situations that are factually similar to DES cases." *Id.* at 191. In *Thomas,* reviewing a grant of summary judgment to defendants and thus construing the record in favor of the plaintiffs, the Wisconsin Supreme Court determined that the WLC situation was analogous to the DES situation for reasons including the balance of equities, public policy, and the fungibility of the product at issue, and thus allowed the plaintiff in that case to pursue his claim on a risk contribution theory. 285 Wis.2d at 307-16. Because the defendants in *Thomas* agreed that the plaintiff was unable to identify the specific manufacturer of the WLC that harmed him, the court did not consider whether in fact the plaintiff was unable to make such an identification. *Id.* at 252.

Defendant Sherwin-Williams now argues that the plaintiffs in the instant cases are not entitled to proceed on the basis of risk contribution because risk contribution becomes available *only* when a plaintiff produces admissible evidence showing that "insurmountable obstacles" foreclose her ability to identify the manufacturer of the product that caused her harm. Sherwin-Williams argues that the plaintiffs have not met that threshold burden because they have not produced evidence that they tried but were

unable to identify the manufacturer of the WLC that harmed them. Sherwin Williams further argues that certain scientific tests can potentially identify the manufacturer of the WLC in paint chips taken from plaintiffs' residences, or at least narrow the pool of potential manufacturers, and that plaintiffs should have availed themselves of these tests before proceeding on a risk contribution theory. I am not persuaded that the law of risk contribution imposes such a threshold burden on WLC plaintiffs.

To begin, the Wisconsin Court of Appeals cases that Sherwin-Williams cites as indicative of the existence of such a requirement are inapposite: at issue in both was the extension of risk contribution theory to new categories of consumer products claims, which is in contrast to the present case which applies risk contribution theory to a product for which the theory's applicability has already been established by the state supreme court. Rogers v. AAA Wire Products, Inc., 182 Wis.2d 263 (Wis. 1994) (wire bread carts); Drezdzon v. AAA Ins. Co. et al., 121 Wis.2d 697 (Wis.App. 1984) (metal tote boxes). Thus the courts' grant of summary judgment to the defendants in these cases cannot be taken as indicating that the "insurmountable obstacle" is a required showing case-by-case even after precedent has established that risk contribution extends to the type of product at issue. It would be more compelling if Sherwin Williams had provided examples of courts granting summary judgment for defendants on post-*Collins* DES claims on grounds that the plaintiffs had failed to produce evidence that identifying the manufacturer of the DES in their particular case presented an insurmountable obstacle. In addition, the cases cited by Sherwin Williams differed from *Collins* and *Thomas* on a host of factual grounds: they involved a limited number of defendants, there was no possibility that more than one defendant had actually caused

3

the plaintiffs' injuries, and the injuries involved were isolated incidents unlikely to be replicated and not indicative of any broader public health or policy concern. See Laura Worley, The Iceberg Emerged: Wisconsin's Extension of Risk Contribution Theory Beyond DES, 90 Marq. L. Rev. 383, 392-95 (2006)

Further, the court's recognition in *Collins* that the plaintiff faced "insurmountable obstacles" in identifying the manufacturer that harmed her does not amount to a requirement that, as Sherwin Williams would have it, identification of the manufacturer be '"impossible" for the plaintiff.[1] To impose such a requirement would be inconsistent with the risk-contrubution method's burden shifting mechanism as outlined in *Collins*. In *Collins*, the court stated that a DES risk-contribution plaintiff need not allege any facts related to time or geographic location in which a given manufacturer defendant marketed DES, 116 Wis.2s at 193, but that once the plaintiff had made out a *prima facie* case, the defendant might exculpate itself by proving by a preponderance of the evidence that it did not produce or market DES in the time period or in the geographical market where the plaintiff's mother acquired DES. Id. at 197-198. The court explained,

> We conclude that it is appropriate to shift the burden of proof on time and geographic distribution to the defendant drug companies because they will have better access to relevant records than the plaintiff. Further, if relevant records do not exist, we believe that the equities of DES cases favor placing the consequences on defendants.

Id. at 198. Given this allocation of burdens, it would be illogical and repetitious for a court to impose a requirement that DES plaintiffs show they had tried and were unable to identify (or eliminate) the manufacturers that sold DES in the relevant time and

---

[1] The defendants in *Thomas* did not contest plaintiff's ability to identify the manufacturer of the WLC that caused his harm, so the court did not address the issue.

4

geographical market as a prerequisite to proceeding on the risk contribution theory. And the court's recognition of the possibility of exculpation (or "narrowing the pool") on the basis of time and geography did not negate the premise that the plaintiff faced "insurmountable obstacles" in identifying the manufacturer of the DES that harmed her.

For similar reasons, it would be illogical and repetitious to require WLC plaintiffs to perform the kind of testing Sherwin Williams describes as a prerequisite to proceeding on risk contribution theory. As *Collins* did for DES defendants, *Thomas* grants WLC defendants the opportunity to exculpate themselves on the basis of time and geography; *Thomas* further notes that, unlike DES defendants, WLC defendants also have "ample grounds to attack and eviscerate [plaintiff's] prima facie case, with some of those grounds including that lead poisoning could stem from any number of sources (since lead itself is ubiquitous) and that it is difficult to know whether [plaintiff's] injuries stem from lead poisoning since they are not signature injuries." *Thomas*, 265 Wis.2d at 321. Such "grounds" might also include evidence of chemical dissimilarities between WLC or paint found in a plaintiff's home and a defendant's known product. I am prepared to recognize such a defense, after the plaintiff has made out a prima facie case. But the same equitable and policy considerations that support the court's allocation of the burden of proof on time- and geography-based exculpation to defendants in *Collins* supports allocation of the burden on chemical-identity-based exculpation to defendants here. As in *Collins* the defendants are more likely to have access to the relevant records (like formula cards or samples of WLC or paint products against which to compare the samples harvested from plaintiffs' homes). And, as in *Collins*, if relevant records do not exist, the equities favor placing the consequences on

defendants. (How long and hard would a plaintiff have to look for such non-existent records before she could establish that finding them presented an "insurmountable obstacle"?)

As the Wisconsin Supreme Court established in *Thomas* and *Collins*, the basis for liability in risk contribution cases is a showing that the defendant manufacturer "reasonably could have contributed in some way to the actual injury." *Collins*, 116 Wis.2d at 191 n. 10; *Thomas*, 285 Wis.2d at 322. To achieve this result, the court crafted a process in which plaintiffs establish a prima facie case on the basis of a manufacturer's contribution to the risk to the public by manufacturing a defective product, and defendants may then exculpate themselves by establishing that their product could not in fact have caused the plaintiff's injury. See *Collins*, 116 Wis.2d at 317. Requiring plaintiffs to demonstrate that they have tried and failed to identify the manufacturer that harmed them will improve neither the integrity nor the outcome of this process, and the equities identified by the Wisconsin courts disfavor such a requirement. I will not foreclose plaintiffs' use of risk contribution theory on these grounds.

For the foregoing reasons, **IT IS ORDERED** that Defendant The Sherwin William Company's Motions for Summary Judgment Because Plaintiffs Have Not Demonstrated A Prerequisite Needed for the Risk-Contribution Theory to Apply (No. 07-CV-0303, ECF # 640; No. 07-CV-0441, ECF # 658; No. 10-CV-0075, ECF # 487) are **DENIED.**

Dated at Milwaukee, Wisconsin, this 13th day of July, 2018.

                                   s/Lynn Adelman
                                   LYNN ADELMAN
                                   District Judge