# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GLENN BURTON, JR.,
    Plaintiff,

              v.      Case No. 07-CV-0303

AMERICAN CYANAMID et al.,
    Defendants;

RAVON OWENS,
    Plaintiff,

              v.      Case No. 07-CV-0441

AMERICAN CYANAMID et al.,
    Defendants;

CESAR SIFUENTES,
    Plaintiff,

              v.      Case No. 10-CV-0075

AMERICAN CYANAMID et al.,
    Defendants.

## DECISION AND ORDER

Plaintiffs bring these negligence and failure to warn claims against various manufacturers of white lead carbonate pigment (WLC). Plaintiffs allege that they were harmed by ingesting paint containing WLC when they were children. Each plaintiff further alleges that he or she is unable to identify the manufacturer of the WLC that harmed him or her; in consequence, plaintiffs' substantive claims rely on Wisconsin's risk contribution theory of liability which relaxes the traditional causation standard and requires a plaintiff to prove only that defendants "contributed to the risk of injury to the

public, and, consequently, . . . to the individual plaintiffs." *Thomas ex rel. Gramling v. Mallett*, 285 Wis. 2d 236, 289 (Wis. 2005). Before me now is a motion for summary judgment by defendant E. I. du Pont de Nemours and Company (DuPont), together with a related motion by plaintiffs regarding one of DuPont's expert witnesses.

Under the risk contribution theory framed in *Thomas,* a plaintiff who brings a WLC case does not bear the traditional burden of proving that a particular lead-pigment manufacturer caused the plaintiff's injury. Instead, so long as a plaintiff makes a *prima facie* showing that the manufacturer produced or marketed WLC pigment sometime during the existence of the home where the plaintiff ingested lead, then the burden is on each manufacturer to prove by a preponderance of the evidence that it did not produce or market WLC either during the home's existence or in the geographical market where the home is located. If there are no records (or no longer any records) to prove the manufacturer's defense, then the defense fails. Essentially, this defense gives the defendant an opportunity to disprove causation: if the defendant did not produce or market WLC in the geographic area where the plaintiff ultimately ingested lead, then the defendant could not have reasonably contributed to the plaintiff's alleged injuries. *See Thomas,* 285 Wis.2d at 316-17.

The *Thomas* court's stated intention in crafting this procedure was to "yield a pool of defendants which can reasonably be assumed could have caused the plaintiff's injuries." *Id.* at 322. A liable pigment manufacturer is one that "reasonably could have contributed in some way to the actual injury." *Id.* DuPont argues that it is entitled to summary judgment because the record shows that it could not reasonably have contributed to the plaintiffs' actual injuries.

## I.    **LEGAL STANDARD**

When I consider a motion for summary judgment, I am to treat the evidence of the non-movant as true and draw all reasonable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I am to grant summary judgment if the movant shows that there are no genuine issues of material fact such that the movant is entitled to judgment as a matter of law. *Blasius v. Angel Automotive, Inc.,* 839 F. 3d 639, 644 (7th Cir. 2016).

In addition, when reviewing a summary judgment motion, I may only consider evidence that would be admissible at trial. *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 761 (7th Cir.2008). Federal Rule of Evidence 702 governs expert witness testimony and states that expert witness testimony is admissible if (1) the witness is qualified by knowledge, skill, experience, training, or education; (2) the witness's specialized knowledge will help the jury understand evidence or determine a fact issue; (3) the testimony is based on sufficient facts or data; and (4) the expert has reliably applied principles and methods to the facts of the case. *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *Daubert*, 509 U.S. 579 (1993). The court functions as a "gatekeeper" to exclude unreliable expert testimony. *Kumho Tire*, 526 U.S. at 148. The key inquiry is "the validity of the methodology employed by an expert, not the quality of data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir.2013). "The reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology—the framework—of the expert's analysis." *Id.* at 808.

## II. **DISCUSSION**

*A. Exculpatory defense based on chemical analysis of paint in plaintiffs' homes.*

DuPont argues for summary judgment on grounds that chemical analysis of paint chips taken from the residences where the plaintiffs allegedly ingested lead indicates that WLC manufactured by DuPont was not present, such that DuPont could not reasonably have contributed to plaintiffs' actual injuries. DuPont relies on the proffered testimony of Douglas M. Lamb, PhD., a paint chemist who would testify that it is his opinion to a reasonable degree of scientific certainty that none of the paint in the plaintiffs' residences contains WLC manufactured by DuPont. In forming his opinion, Dr. Lamb compared chemical analyses of the elements and compounds found in each layer of paint in the chips with the formulas for various types of paint known to contain WLC manufactured by DuPont, finding no matches. Plaintiffs have moved to exclude Dr. Lamb's opinion from evidence on grounds of both relevance and reliability.

As to relevance, plaintiffs argue that the chemical analysis of WLC or paint found in plaintiffs' homes bears neither upon plaintiffs' *prima facie* negligence and strict liability claims[1] nor upon the exculpatory defenses of time and geographic market identified in

---

[1] The relevant language from *Thomas* is as follows:
"Applying the risk-contribution theory to Thomas' negligence claim, he will have to prove the following elements to the satisfaction of the trier of fact:
(1) That he ingested white lead carbonate;
(2) That the white lead carbonate caused his injuries;
(3) That the [defendants] produced or marketed the type of WLC he ingested; and
(4) That the [defendants'] conduct in producing or marketing the white lead carbonate constituted a breach of a legally recognized duty to Thomas.
Because Thomas cannot prove the specific type of white lead carbonate he ingested, he need only prove that the Pigment Manufacturers

*Thomas*. Plaintiffs argue that the Wisconsin Supreme Court's explicit recognition of the time and geographic market defenses implies a rejection of other possible exculpatory defenses, including one based on chemical analysis of the paint in plaintiffs homes.

However, I do not read the *Thomas* court's explicit acknowledgement of the time and geographic market defenses as necessarily implying that other exculpatory defenses are unavailable. Instead, examination of the Wisconsin Supreme Court's express reasoning and intentions in *Thomas* and *Collins* suggest that defendants ought to be given significant latitude to present exculpatory defenses to the trier of fact, as a counterpoint to the latitude granted to plaintiffs with respect to causation in making out the *prima facie* case. *Collins* and *Thomas* recognized that plaintiffs in certain products liability cases face problems of proof with respect to causation; the court therefore crafted a process in which plaintiffs establish a prima facie case on the basis of a manufacturer's contribution to the risk to the public, and defendants may then exculpate themselves by establishing that their product could not in fact have caused the plaintiff's

---

produced or marketed white lead carbonate for use during the relevant time period: the duration of the house's existence.
  Applying risk contribution theory to Thomas' strict products liability claim, Thomas will have to prove the following elements to the satisfaction of the trier of fact:
    (1) That the white lead carbonate was defective when it left the possession or control of the pigment manufacturers;
    (2) That it was unreasonably dangerous to the user or consumer;
    (3) That the defect was a cause of [the plaintiff's] injuries or damages;
    (4) That the pigment manufacturer engaged in the business of producing or marketing white lead carbonate or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the pigment manufacturer; and,
    (5) That the product was one which the company expected to reach the user or consumer without substantial change in the condition when it was sold."
Thomas, 285 Wis.2d at 320-21.

injury. See *Collins*, 116 Wis.2d at 317. This process yields as a basis for a liability the conclusion that the defendant manufacturer "reasonably could have contributed in some way to the *actual* injury." *Collins*, 116 Wis.2d at 191 n. 10; *Thomas*, 285 Wis.2d at 322 (emphasis added). Also see *id.* at 317 ("*Collins* was concerned with providing possibly innocent defendants a means to exculpate themselves by establishing their product could not have caused the injury.") The geographical and temporal defenses provided for by the *Thomas* court function within this broader paradigm as proxies for actual causation, and other methods of proving non-causation ought also to be entertained at the affirmative defense stage. In short, the intended effect of the risk contribution process is to shift the *burden* of proof—but not to curtail *methods* of proof—with respect to actual causation.

Plaintiffs also object that the Seventh Circuit's discussion of risk contribution in *Gibson* limits the available exculpatory defenses to just time and geography. *Gibson v. American Cyanamid Co.*, 760 F. 3d 600, 614 (7th Cir. 2014) (noting only the time period and geography defenses); *also see id.* at 625 (describing risk contribution as a theory that "permit(s) tortfeasors to be held liable to plaintiffs who they did not actually injure or to be held liable for injuries that they did not actually cause"). Plaintiffs would have me treat this language from *Gibson* as a definitive statement on the scope of the exculpatory defenses available under risk contribution theory, and thus disallow as a matter of law causation defenses based on evidence about the presence of a certain manufacturer's WLC product in the home where the plaintiff allegedly ingested lead. It is important, though, to recognize that the issue before the *Gibson* court was not the scope of the available exculpatory defenses but rather whether risk-contribution theory

6

as applied to WLC in Thomas was a violation of the pigment manufacturers' substantive due process rights. *See id.* at 621-622. Though *Gibson* may be taken as holding that an interpretation of risk contribution that recognized only the temporal and geographic defenses would not on its own violate the federal Constitution, *Gibson* does not bar me from recognizing additional exculpatory defenses within the risk contribution rubric that are consistent with the reasoning and intentions of the Wisconsin Supreme Court. Indeed, the interpretation of *Thomas* that allows for exculpation based on causation-in-fact would certainly fall well within the due process boundaries described by *Gibson*. *See, e.g., id.* at 625 ("To be sure, most states for most types of claims continue to apply a strict causation-in-fact requirement but that does not mean that those states that have chosen to develop their common law to permit recovery on a theory of culpable contribution to the risk of injury have made an irrational or arbitrary choice." ). I therefore find that Dr. Lamb's opinion testimony regarding the chemical analysis of the paint in plaintiffs' homes is relevant to an exculpatory defense that is available to DuPont.

Plaintiffs also argue that Dr. Lamb's opinion is inadmissible because it is based on unreliable data and methods. The process by which Dr. Lamb arrived at his opinion is as follows:

Plaintiffs retained a lead inspector to collect paint chip samples from each of the plaintiffs' homes. Microscopist Christopher Palenik of Microtrace, Inc. analyzed the paint chip samples to identify the number of layers in each and the chemical makeup of each layer. Specifically, Palenik used energy dispersive X-ray spectroscopy (EDS) to identify which elements were in each layer of paint, and in what quantity (by percent weight).

7

Palenik also analyzed each of the paint chip samples using Raman microspectroscopy to determine which compounds were in each paint layer.

Dr. Lamb then compared the reported results produced by Palenik with the DuPont paint formulas that contained WLC. Specifically, Dr. Lamb looked at paint formulas only from the years 1917-1924, which were the years during which DuPont manufactured WLC. DuPont claims that it only used the WLC it produced during those years in its own paints, and did not provide WLC to other paint manufacturers, so Dr. Lamb did not review formulas for paint made by other manufacturers. Furthermore, Dr. Lamb only considered the formulas for certain color families among the exterior paints in DuPont's Prepared House Paint line because those were allegedly the only DuPont paints that contained WLC that could have been available for use in Milwaukee. Lamb concluded that none of the paint layers matched any of the identified DuPont paint formulas, and that therefore WLC produced by DuPont was not present in the plaintiffs' homes and could not have caused their injuries.

Plaintiffs object to the limitations that Dr. Lamb imposed in choosing the formulas he reviewed. These challenges include the following: (1) the formulas excluded all white lead in oil manufactured by DuPont on grounds that DuPont's white lead-in-oil allegedly was not available for sale in Milwaukee between 1917 and 1924; (2) the formulas reviewed by Dr. Lamb exclude all white lead-in-oil allegedly manufactured by DuPont between 1925 and at least 1945 pursuant to a contract with National Lead; (3) the formulas excluded white lead in oil which may have been manufactured by DuPont after 1925; (4) the formulas excluded paint which may have been manufactured by other paint manufacturers using DuPont's WLC. While these concerns may implicate the

8

reliability of Dr. Lamb's conclusions, they do not undermine the validity of his methodology. "The factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Manpower Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir., 2013). These concerns about the selection of formulas for comparison go to the weight of Dr. Lamb's testimony and are for the jury.

Plaintiffs also object to Dr. Lamb's reliance on data generated through EDS, noting in particular that Dr. Palenik redid the EDS scan of certain layers of paint and that the reanalysis yielded different results. Plaintiffs argue that this variation in EDS results means that no reliable conclusions can be drawn about whether the paint in a particular layer of paint is consistent with any of DuPont's known paint formulations during the years that it manufactured WLC. This objection is insufficient to disqualify Dr. Lamb's testimony. EDS is a mature technique widely used by scientists to analyze the elemental composition of paints and pigments. The results of Dr. Palenik's subsequent EDS scans of the paint layer were within the statistical margin of error for the first result. And to the extent that plaintiffs have concerns regarding the quality of the EDS data that Dr. Lamb relied on in reaching his conclusions, those questions go to the weight of his testimony, not its credibility. *See Stollings v. Ryobi Technologies, Inc.,* 725 F. 3d 753, 767 (7th Cir., 2013) ("The judge should have let the jury determine how the uncertainty about [the accuracy of the data] affected the weight of [the expert's] testimony.")

Dr. Lamb's opinion testimony is both relevant and sufficiently reliable such that exclusion is not justified. But because significant jury questions remain with respect to

the credibility and weight of Dr. Lamb's conclusions, DuPont is not entitled to summary judgment on its chemical analysis exculpatory defense.

   *B. Exculpation based on geographical market*

DuPont also argues that it is entitled to summary judgment on the geographical market defense framed in *Thomas* on grounds that no paint containing WLC manufactured by DuPont was ever available for sale in Milwaukee County. *Thomas,* 285 Wis.2d at 321.[2] The record indicates the following facts related to Dupont's geographical market defense. DuPont manufactured WLC between 1917-1924 and incorporated the WLC in certain of its own paint products. Each of the plaintiffs' houses was in existence during this time. After 1924, DuPont purchased WLC for use in its paint from other manufacturers. DuPont had a sales agent located in downtown Milwaukee during the relevant time frame. This agent, the John Pritzlaff Hardware Company ("Pritzlaff") was a wholesaler, distributing DuPont paint to retail outlets. Certain pages of the Pritzlaff catalog show advertisements for DuPont prepared house paint containing lead. DuPont also engaged in nationwide print advertising campaigns, which reached Milwaukee publications. DuPont argues that plaintiffs have not provided evidence of any local retailer in Milwaukee selling or advertising DuPont paint. However, bearing in mind DuPont's burden to disprove its presence in the geographic market, and drawing all inferences in the plaintiffs' favor as I must, I find that a material issue of fact

---

[2] Whether the geographic market is appropriately defined as Milwaukee county is an open question, but it need not be decided for purposes of resolving DuPont's present motion for summary judgment.

exists regarding DuPont's marketing of its product in the geographic area sufficient to withstand summary judgment.

III. **CONCLUSION**

**FOR THE FOREGOING REASONS, IT IS ORDERED** that plaintiffs' motions to exclude expert opinion testimony of Douglas M. Lamb, PhD (No. 07-cv-0303, ECF No. 567; No. 07-cv-0441, ECF No. 504; No. 10-cv-0075, ECF No. 431) are **DENIED**.

**IT IS FURTHER ORDERED** that defendant E.I. du Pont de Nemours and Company's motions for summary judgment (No. 07-cv-0303, ECF No. 599; No. 07-cv-0441, ECF No. 551; No. 10-cv-0075, ECF No. 485) are **DENIED.**

Dated at Milwaukee, Wisconsin, this 18th day of July, 2018.

s/Lynn Adelman
LYNN ADELMAN
District Judge