

May 3, 2019

**VIA ELECTRONIC FILING AND HAND DELIVERY**

Honorable Lynn Adelman
U.S. District Court
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, WI 53202

    RE:    *Burton v. American Cyanamid Co., et al.* – 07-C-0303
              *Owens v. American Cyanamid Co., et al.* – 07-C-0441
              *Sifuentes v. American Cyanamid Co., et al.* – 10-C-0075

Dear Judge Adelman:

    I write on behalf of all Defendants in response to Plaintiffs' letter dated May 2, 2019 regarding the preliminary jury instructions. Although the parties agree on many of the preliminary instructions, substantial disagreements remain that they clearly cannot resolve on their own. Defendants urge the Court to adopt their proposed preliminary instructions as submitted on May 2. They provide a short outline of the issues to the jury in a simple, even-handed way, and defer the contested issues until the final instructions.

    Plaintiffs' suggestion that Defendants have been unwilling to negotiate in good faith on this issue is contrary to the record. Plaintiffs filed their own proposed preliminary instructions without any prior consultation with Defendants on April 22 (Dkt. 1395). At the April 23 teleconference, Defendants undertook to meet and confer with Plaintiffs and to submit proposed preliminary instructions (jointly if possible) by April 29. On the morning of April 26, Defendants sent proposed preliminary instructions to Plaintiffs that sought "to simplify the instructions, to defer legalisms as much as possible to the final instructions, and to give a short high-level statement of the parties' factual contentions in an even-handed way." Plaintiffs advised Defendants that they would send comments by the morning of April 30, and asked Defendants to defer any submission to the Court to see if the parties could achieve consensus. On April 29, Defendants accordingly asked the Court to permit them to submit proposed instructions after receiving feedback from the Plaintiffs, and the Court granted that request (Dkt. 1425).

    On May 1, Plaintiffs sent comments in the form of a redline of Defendants' proposed preliminary instructions. The redline largely just deleted the language that Defendants proposed and reinstated without explanation what Plaintiffs had previously proposed. In some respects, Plaintiffs' May 1 proposal moved in the wrong direction. For example, Plaintiffs' original

preliminary instructions used the highly prejudicial phrase "lead poisoned" or "poisoned" five times; their May 1 proposal used that term nine times. Plaintiffs also reinstated detailed discussions of legal theories and elements on which the parties disagree, and that are better deferred to the final instructions. Defendants accordingly advised Plaintiffs on May 2 that, in light of the substantial differences in the parties' approach and the imminence of trial, Defendants would proceed with filing their own proposed instructions to the Court.

The principal areas of disagreement are as follows:

**The "Claims and Defenses" Instruction.**

Defendants' proposed preliminary instructions describe each side's factual contentions and identify Plaintiffs' legal theories as negligence and strict liability failure to warn, while deferring undecided legal issues to the final instructions. But Plaintiffs' proposed preliminary instructions are one-sided and contain inaccurate statements of the law, including:

- As noted, Plaintiffs use the phrase "lead poisoned" or "poisoned" nine times. This is a prejudicial framing of the issue, and that phrase should not be part of the Court's instructions. Defendants instead propose simply telling the jury that Plaintiffs must prove injury.

- Plaintiffs insist on language stating that the three Plaintiffs make their allegations "individually and together," and reject language proposed by Defendants stating that the jury "must consider each Plaintiff's claim separately," and that "[i]t does not follow that if one is successful, the others are too." The Court should adopt Defendants' approach, which tracks the Seventh Circuit Pattern Instructions.[1]

- Plaintiffs propose to use legalese that will be difficult for the jury to understand, and that is incomplete. Plaintiffs propose to recite modified versions of the elements listed in paragraphs 161 and 162 of the *Thomas* opinion, but a jury that has yet to hear evidence is unlikely to be able to understand these instructions without further explanation. For example, if the jury is told that the strict-liability claim requires plaintiffs to prove that the white lead carbonate was "defective when it left the possession or control" of each defendant, it is only fair to also instruct the jury that proof that the white lead carbonate pigment was defective requires proof that a defendant "(1) intended that its product would be used in residential paint; (2) should reasonably have foreseen that the product would be dangerous when used in residential paint; and (3) failed to adequately warn consumers about those dangers." June 12, 2018 Opinion at 5-6. Nor should the Court merely inform the jury that it must decide if Defendants breached a "legally recognized

---

[1] *See* Seventh Circuit Pattern Instruction 1.25: Multiple Claims; Multiple Plaintiffs/Defendants ("You must give separate consideration to each claim and each party in this case. [Although there are [number] defendants, it does not follow that if one is liable, any of the others is also liable.] [Although there are [number] plaintiffs, it does not follow that if one is successful, the others are, too.]").

duty"--the language of *Thomas*--without telling the jury what duties are legally recognized and potentially applicable. It is not the province of the jury to decide for itself what is "legally recognized."

- Plaintiffs' proposal also misstates the elements in the *Thomas* opinion.

    o While *Thomas* described the potentially actionable conduct as "producing or marketing" white lead carbonate, *see Thomas* ¶¶ 161, 162, Plaintiffs' proposal describe the potentially actionable conduct as "manufacturing, promoting, selling, distributing, and/or supplying" white lead carbonate.

    o While the elements listed in *Thomas* ¶¶ 161, 162 refer to proof of "injury," Plaintiffs improperly substitute the phrase "lead poisoning."

    o While the elements of negligence recited in *Thomas* require proof that each defendant "produced or marketed the type of white lead carbonate" the plaintiff "ingested," Plaintiffs' proposal omits this requirement and improperly states that this may be "taken as a fact."

- Plaintiffs' proposal also repeatedly and improperly refers to proof of the elements of *Thomas* with respect to "Defendants" plural, when Plaintiffs must prove each element as to each Defendant individually.

- Plaintiffs' proposal also misstates the requirements and improperly limits the avenues for establishing exculpation. At this stage, the jury should simply be instructed that establishing exculpation requires each Defendant to prove that "it could not reasonably have contributed to the plaintiff's alleged injury." *Thomas* ¶ 164.

**The "Inferences" Instruction.**

An instruction on "inferences" at the start of the trial is unnecessary and can be deferred until the final instructions. If an instruction on the subject is given, it should include the limitations that apply to jury inferences, including that the jury "may not draw an inference based on speculation." And the Court should instruct the jury that Wisconsin law does not permit inferences stacked on top of inferences, as follows: "When you have chosen among competing reasonable inferences, the law does not permit you to draw a further inference from the inference you choose to draw. In other words, you may not stack inferences on top of inferences. You may only draw a second inference if the underlying evidence in the case independently supports that second inference." This instruction is based on the Wisconsin Supreme Court's opinion in *Yelk v. Seefeldt,* 35 Wis. 2d 271, 281 (1967).

### The "Direct and Circumstantial Evidence" Instruction.

This instruction is unnecessary before the jury has heard evidence. The Seventh Circuit sample instructions state that "[t]he Committee does not expect this instruction will be needed in every case," and that it should be given only if it is "Appropriate to Case." *See* Seventh Circuit Pattern Jury Instructions at p.414 & n.9. There is no particularized need for it here.

### The "Questions by Jurors - Permitted" Instruction.

Defendants object to juror questions. The Seventh Circuit does "not condone" the practice of allowing juror questions. *United States v. Feinberg*, 89 F.3d 333, 336-337 (7th Cir. 1996). It is "fraught with risks," including compromising the neutrality of the jurors, spurring premature deliberation, and forcing attorneys to risk alienating jurors. *Id.* "In the vast majority of cases the risks [of allowing juror questions] outweigh the benefits." *Id.* There is no reason to allow juror questions here, and doing so also risks prolonging what is likely to be a lengthy trial.

### The "Note-Taking" Instruction.

Given the number of parties and the anticipated length of the trial, Defendants propose to advise the jury that it may take notes. This particular proposal was not included in the version sent to Plaintiffs, but should not be controversial.

.

Very truly yours,

GODFREY & KAHN, S.C.

*s/ Daniel T. Flaherty*

Daniel T. Flaherty

DTF:smg

cc: All Counsel of Record (via ecf)

20573675.1