# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| GLENN BURTON, JR, <br>         Plaintiff, <br> v. <br> AMERICAN CYANAMID CO, et al., <br>         Defendants; | Case No. 07-CV-0303 |
| RAVON OWENS, <br>         Plaintiff, <br> v. <br> AMERICAN CYANAMID CO, et al., <br>         Defendants; | Case No. 07-CV-0441 |
| CESAR SIFUENTES, <br>         Plaintiff, <br> v. <br> AMERICAN CYANAMID CO, et al., <br>         Defendants. | Case No. 10-CV-0075 |

## DECISION AND ORDER

Glenn Burton, Ravon Owens, and Cesar Sifuentes brought negligence and strict liability claims against six former manufacturers of white lead carbonate pigment (WLC). The plaintiffs alleged that they suffered injuries when, as young children, they ingested WLC that had been applied to the walls of their homes as a component of paint. Because they could not identify the manufacturers of the specific WLC that harmed them, the plaintiffs proceeded under the risk contribution theory of liability, which was extended to WLC cases by the Wisconsin Supreme Court in *Thomas ex rel. Gramling v Mallett*, 285 Wis.2d 236 (2005).

I consolidated the three cases for trial. At the close of trial, the jury returned verdicts in favor of each of the plaintiffs and against three of the named defendants: Sherwin-

Williams, DuPont, and Armstrong Containers. The jury awarded each plaintiff two million dollars in damages, and the three liable defendants agreed to allocate this sum amongst themselves rather than litigate allocation in a second phase of trial.

Armstrong Containers has filed a motion for judgment as a matter of law in each of the three cases pursuant to Fed. R. Civ. P. 50. It argues that judgment as a matter of law is proper because the evidence at trial did not provide the jury with legally sufficient bases for its verdicts. For the reasons discussed below, I will deny the motion.

I.    **BACKGROUND FACTS**

WLC is a fine white powder that was historically used as a pigment in paint. Over the course of the twentieth century, the medical community came to understand that the residential use of paint containing WLC was associated with childhood lead exposure. The date when American medical experts first understood and publicized the risk of lead paint to children—particularly the risk that the paint might deteriorate and allow the WLC it contained to be ingested in the form of dust—was at issue in this trial; plaintiffs' position is that the risk was known as early as the nineteen-teens or before. Federal regulations limited and then banned the use of lead pigment in residential paint beginning in the 1970s.

Armstrong Containers is the successor in interest to the MacGregor Lead Company, which manufactured WLC during the twentieth century. At trial, plaintiffs' expert historian Gerald Markowitz testified that MacGregor sold WLC to four other companies (Armstrong Paint & Varnish, Elliott Paint & Varnish, Enterprise Paint, and Ace Hardware) which incorporated the WLC into their own paint products. Markowitz further testified that

2

MacGregor also used WLC in its own "Scotch Laddie" brand line of paint. Evidence at trial showed that Scotch Laddie paint was advertised in Milwaukee.

At trial, Armstrong admitted evidence of two Scotch Laddie paint can labels which were likely placed on cans sometime after 1955.

The first read:

> CAUTION! COMBUSTIBLE
>
> Keep away from Heat, Sparks, and Open Flame. CONTAINS LEAD OR OTHER COMPOUNDS HARMFUL IF EATEN. Do not apply on toys, furniture, window sills or any interior surfaces which might be chewed by children . . . Do Not Take Internally . . . USE WITH ADEQUATE VENTILATION . . . Avoid prolonged contact with skin . . . Wash thoroughly after using and before eating or smoking . . . Keep container closed when not in use.
> KEEP OUT OF THE REACH OF CHILDREN.

The second stated:

> WARNING COMBUSTIBLE – Keep away from heat and open flame. Do Not Take internally: CONTAINS LEAD OR OTHER COMPOUNDS HARMFUL IF EATEN. Do not apply on toys or surfaces children might chew. Use with adequate ventilation. Avoid prolonged breathing of vapor or spray mist. Avoid prolonged contact with skin. After using and before eating or smoking, wash skin thoroughly. Keep container closed when not in use.

ECF # 1738 at 6.

Each of the three plaintiffs was diagnosed with elevated blood lead levels in the 1990s or early 2000s. At the time of each plaintiff's diagnosis, the Milwaukee health department tested the dust in the plaintiff's home and found lead present in the dust. In preparation for this litigation, plaintiffs tested samples of paint taken from various locations in their homes; WLC was found in each home. At trial, an expert witness testified that the lead exposure caused injury to each plaintiff's brain.

3

## II. STANDARD

I may enter judgment against a party who has been fully heard on an issue in a jury trial if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Fed. R. Civ. P. 50(a); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149-51 (2000). "Judgment as a matter of law is proper only if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case, viewing the evidence in the light most favorable to the nonmovant" and making all reasonable inferences permitted by the evidence. *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001) (citations omitted); *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 449 (7th Cir. 2001). In rendering this decision, I may not weigh the evidence or make credibility determinations. *Martinez v. City of Chicago,* 900 F.3d 838, 844 (7th Cir. 2018). Although I am to review the entire record, I "must disregard all evidence favorable to the moving party that the jury [was] not required to believe." *Reeves*, 530 U.S. at 150-51.

## III. DISCUSSION

Armstrong Containers makes two arguments in support of its motion for judgment as a matter of law: (1) that plaintiffs presented insufficient evidence that MacGregor WLC could reasonably have contributed to their injuries, and (2) that plaintiffs presented insufficient evidence that the warnings on the Scotch Laddie paint labels were inadequate. I will address each argument in turn.

*A. Causation*

Armstrong argues that the plaintiffs presented insufficient evidence that MacGregor WLC could have contributed to their injuries. First, it argues that plaintiffs presented no evidence that the companies to which MacGregor sold its WLC ever sold paint products containing MacGregor WLC in Milwaukee. Second, it argues that plaintiffs presented no evidence to rebut its expert chemist's opinion that testing of the paint samples from plaintiffs' homes showed that Scotch Laddie paint was not present.

Risk contribution theory under *Thomas* relaxes the causation standard in that the plaintiff need not prove the identity of the maker or seller of the WLC that caused his harm; rather a plaintiff may make a prima facie case that a defendant could reasonably have caused the plaintiff's harm by showing that the defendant made or sold WLC during the period of existence of the home where the plaintiff was exposed to lead. *Thomas,* 285 Wis. 2d at 320. Once the plaintiff makes such a prima facie case, "the burden of proof shifts to each defendant to prove by a preponderance of the evidence that it did not produce or market white lead carbonate during the relevant time period or in the geographic market where the house is located." *Id.* at 321. In the course of the present case, I ruled that WLC defendants might also exculpate themselves through chemical analysis of the paint in the home where the plaintiff was exposed. Consistent with the exculpatory defenses outlined in *Thomas,* the chemical analysis defense puts the burden on the defendant to prove by a preponderance of the evidence that its WLC was not present in the home. The goal of this process (prima facie case plus defenses) is to yield a "pool of defendants which can reasonably be assumed could have caused the plaintiff's injuries." *Id.* at 322.

5

Armstrong argues that no evidence was produced at trial that the four companies to which MacGregor sold WLC ever sold paint containing MacGregor WLC in Milwaukee. Armstrong concedes that plaintiffs' expert Dr. Markowitz testified that the four companies did sell their paint products in Milwaukee, but emphasizes Markowitz's testimony that his reseach had unearthed no documents in which any of those companies explicitly announced that the paint it offered for sale in Milwaukee contained WLC manufactured by MacGregor. The argument is unpersuasive. It was Armstrong's burden to prove by a preponderance of the evidence that the WLC it manufactured was not sold in Milwaukee. The jury heard evidence that MacGregor sold WLC to other paint companies and that those paint companies advertised their products in Milwaukee. That evidence is sufficient to support an inference that some of the products sold in Milwaukee contained WLC manufactured by MacGregor, even if the third-party companies did not explicitly announce as much. That inference is sufficient to support the jury's conclusion that Armstrong did not meet its burden of proof on the geographic market defense as relevant to the MacGregor WLC sold to third-party paint manufacturers.

With respect to the WLC that MacGregor integrated into its own Scotch Laddie paint, Armstrong argues that plaintiffs failed to rebut the testimony of its expert chemist, Dr. Brown, that testing of paint chip samples taken from the homes where the plaintiffs were exposed revealed that Scotch Laddie paint was not present. To reach this opinion, Dr. Brown looked within the paint chip samples for individual layers of paint that contained WLC. He analyzed the elemental makeup of those layers, and then compared those results to a formula for Scotch Laddie paint (85% WLC, 15% titanium dioxide) that had

6

been published in advertisements and on Scotch Laddie cans. He concluded that none of the layers of paint had an elemental makeup that matched the published formula.

It was Armstrong's burden to prove by a preponderance of the evidence that Scotch Laddie paint was not present in the plaintiffs' homes. The jury was under no obligation to assign dispositive weight to the testimony of Armstrong's expert witness, even if plaintiffs presented no explicit rebuttal evidence. Perhaps the jury found Brown's methods unconvincing; perhaps it questioned whether the paint chip samples he tested were sufficiently representative of the paint present in the homes, especially given that many of the homes had undergone lead abatement following the plaintiffs' diagnoses; or perhaps the jury had some other reason for declining to credit Dr. Brown's conclusions. To grant judgment as a matter of law to Armstrong based on this issue would require me to overrule the jury's credibility determination, which I will not do.

### B. Adequacy of Warnings

Armstrong moves in the alternative for judgment as a matter of law on plaintiffs' strict liability claims on grounds that plaintiffs did not present sufficient evidence that the warnings on the Scotch Laddie paint labels were inadequate. This argument fails because it was not plaintiffs' burden to demonstrate that the warnings were inadequate; rather, once plaintiffs made a prima facie case that the product was dangerously defective under the "consumer contemplation" test, it was Armstrong's burden to rebut that evidence by demonstrating that it had issued warnings sufficient to render the product not reasonably defective. *See Green v. Smith & Nephew AHP, Inc.,* 245 Wis. 2d 772, 829 (2001); *Schuh v. Fox River Tractor Co.*, 63 Wis.2d 728, 737 (1974). See also my discussion at ECF #

7

1775 at 14-16. The jury could reasonably have found that WLC in paint was dangerously defective because the ordinary consumer would not have contemplated the risk that as paint deteriorated the WLC would be released and mix with household dust, where it might readily be ingested by children. The jury could also reasonably have found that the warnings on the Scotch Laddie labels were not adequate to prevent the product from being unreasonably dangerous because the warnings addressed only the risk that children might chew the surfaces where the paint was applied and not the risk that the paint might deteriorate and release WLC to blend with household dust. Thus, I will not grant judgment as a matter of law to Armstrong Containers on warnings grounds.

### IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Armstrong Containers' motion for judgment as a matter of law (ECF # 1737) is **DENIED.**

Dated at Milwaukee, Wisconsin this 28th day of February, 2020.

s/Lynn Adelman
LYNN ADELMAN
U.S. District Judge
